IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER WRIGHT,                                :
                                             :
                    Plaintiff                :
v.                                           :
                                             :
METROPOLITAN LIFE INSURANCE                  :    Civil Action No. 1:07-cv-01808 RBW
COMPANY                                      :
                                             :
and                                          :
                                             :
BEARINGPOINT, INC. LONG TERM                 :
DISABILITY PLAN,                             :
                                             :
                    Defendants               :

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Metropolitan Life Insurance Company and BearingPoint, Inc. Long Term Disability Plan ("Defendants"), through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby move the Court for an Order entering judgment in favor of Defendants and against Plaintiff Peter Wright. The grounds for this Motion are fully set forth in the accompanying Statement of Undisputed Material Facts and Memorandum of Points and Authorities in Support filed herewith and incorporated herein by reference. Thus, the Court's attention is respectfully directed to Defendants' Statement of Undisputed Material Facts and Memorandum of Points and Authorities in Support, and proposed Order filed herewith.

WHEREFORE, Defendants respectfully request that their Motion be granted, that judgment be entered in their favor and against Plaintiff Peter Wright, that Defendants be awarded their costs in this action including reasonable attorneys' fees, and that the Court grant such other and further relief to Defendants as it deems appropriate.

Respectfully submitted,

_____/s/_____

Robert R. Niccolini (Bar # MD24873)
Adam H. Garner (Bar # MD27648)
McGuireWoods LLP
7 Saint Paul Street, Suite 1000
Baltimore, Maryland 21202
(410) 659-4400

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of June 2008, a copy of the foregoing Motion for

Summary Judgment was electronically served and served by first class mail, postage prepaid,

upon Scott B. Elkind, Elkind & Shea, 801 Roeder Road, Suite 550, Silver Spring, Maryland

20910, attorneys for Plaintiff.

_____/s/_____

Adam H. Garner

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER WRIGHT,                                    :
                                                 :
              Plaintiff                          :
v.                                               :
                                                 :
METROPOLITAN LIFE INSURANCE          :          Civil Action No. 1:07-cv-01808 RBW
COMPANY                                          :
                                                 :
and                                              :
                                                 :
BEARINGPOINT, INC. LONG TERM        :
DISABILITY PLAN,                                 :
                                                 :
              Defendants                         :

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants Metropolitan Life Insurance Company ("MetLife") and BearingPoint, Inc. Long Term Disability Plan ("the Plan") (collectively referred to as "Defendants"), through undersigned counsel and pursuant to Local Civil Rule 56.1, hereby submit the following Statement of Undisputed Material Facts and Memorandum of Points and Authorities in Support of their Motion for Summary Judgment and state as follows.

## I.    INTRODUCTION

Plaintiff Peter Wright has filed suit against MetLife and the Plan seeking the reinstatement of his Long-Term Disability ("LTD") Benefits under the Plan, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, as well as for statutory penalties under ERISA. MetLife is the Plan's Claim Administrator and a fiduciary, and, therefore, is required to administer benefits claims in conformance with the documents and instruments governing the Plan. Accordingly, MetLife paid Mr. Wright LTD

benefits for over 24 months prior to terminating them under the Plan's 24-month limited benefit condition for Neuromusculoskeletal disorders. Thus, the issue in this case is not whether Mr. Wright is disabled, it is whether he was entitled to continued benefits under the terms of the Plan due to the nature his particular condition.

For the reasons discussed more fully below, Mr. Wright's claims are without merit and Defendants are entitled to judgment as a matter of law. Specifically, MetLife properly determined that the Plan's 24-month limited benefit condition for Neuromusculoskeletal disorders served to cut off Plaintiff's entitlement to additional LTD benefits. Additionally, Plaintiff is not entitled to statutory penalties under ERISA because MetLife is not the Plan's Plan Administrator, and it otherwise provided with him those documents that MetLife was required to provide and to which he was entitled under ERISA.

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     BearingPoint, Inc. hired Plaintiff Peter Wright, a resident of North Carolina, as a Manager in 1998.[1] *(See Administrative Record, attached hereto as Exhibit A, at p. ML02747.)*

2.     In that capacity, Mr. Wright worked as a consultant, managing and supervising quality assurance reviews on State information technology projects. *(See id.)* Mr. Wright has a bachelor's degree, a Masters of Business Administration, and additional professional certifications. *(See id. at p. ML02749.)*

3.     As a benefit of his employment with BearingPoint, Plaintiff was a participant in the Plan. *(See id. at p. ML00076.)* BearingPoint is the Plan sponsor and Plan Administrator; however, MetLife is the Plan's Claim Administrator. *(See Defendants' Joint Answer, Docket # 3, at ¶¶ 6 and 7.)*

---

[1] BearingPoint, Inc. was formerly known as KPMG Consulting. For the sake of clarity, Defendants will refer to KPMG Consulting by its current name.

4.    The Certificate of Insurance for the Plan states: "MetLife in its discretion has the authority to interpret the terms, conditions, and provisions of the entire contract. This includes the Group Policy, Certificate and any Amendments." *(Exhibit A at p. ML00071.)* Additionally, the Certificate of Insurance states that:

**Discretionary Authority of Plan Administrator
and Other Plan Fiduciaries**

In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

*(Id. at p. ML00101)*(emphasis in original).

5.    In August of 2001, Plaintiff began to experience pain in his wrists while exercising and performing work on an automobile. *(See id. at p. ML02855.)*

6.    Plaintiff's symptoms began to progressively worsen when, in January of 2002, the pain Plaintiff experienced began to prevent him from typing on a computer. *(See id.)* Mr. Wright sought treatment for his condition from several orthopedists, who were unable to ameliorate his symptoms. *(See id.)*

7.    On June 18, 2002, Mr. Wright began receiving treatment from A. Silvia Ross, M.D., a rheumatologist in Raleigh, North Carolina. *(See id.)* At his first session with Dr. Ross, she was unable to confirm a diagnosis for Plaintiff's condition, but suspected that Mr. Wright may have either inflammatory arthritis or an atypical form of Reflex Sympathetic Dystrophy ("RSD"). *(See id. at pp. ML02857-02858.)*

8.    On July16, 2002, Mr. Wright saw Dr. Ross again for a follow up office visit. *(See id. at ML02852.)* At that visit, Mr. Wright stated that the intense pain in his arms had subsided a

bit, but that he continued to have pain and a limited range of motion in his arms. *(See id.)* Based on his symptoms and physical examination, Dr. Ross began to suspect that Plaintiff's symptoms were consistent with Rheumatoid Arthritis, but that she could not be certain. *(See id. at p. ML02853.)*

9.    On or about July 24, 2002, Plaintiff applied for long-term disability ("LTD") benefits through the Plan by submitting a claim for such benefits to MetLife, which it received on July 29, 2002.[2] *(See id. at p. ML00181.)*    At that time, Dr. Ross certified, on a form provided by MetLife, that Mr. Wright suffered from inflammatory polyarthropathy. *(See id. at p. ML02849.)*

10.    The Plan defines the terms "Disabled" and "Disability" as follows:

1.    for the first 36 month period following your Elimination Period, you are unable to perform the material and substantial duties of your Own Occupation, are under the regular care of a Doctor and are not working at any job for wage or profit, unless in an approved Rehabilitation Program;

2.    after the first 36 month period, you are unable to perform any job for which you are qualified or for which you may become reasonably qualified taking into account your training, education or experience

Your loss of earnings must be a direct result of your sickness, pregnancy or accidental injury . . .

*(Id. at p. ML00081.)* The Plan limits the recovery of monthly LTD benefits to 24 months if the claimant is Disabled due to a:

Neuromusculoskeletal and soft tissue disorder including, but not limited to any disease or disorder of the spine or extremities and their surrounding soft tissue; including sprains and strains of joints and adjacent muscles, unless the Disability has objective evidence of:

---

[2] Prior to receiving LTD benefits, Mr. Wright had received short-term disability benefits from a BearingPoint short-term disability plan funded through a contract of insurance with MetLife. *(See id. at pp. ML00458, ML02955-02956.)*

a.      seropositive arthritis

b.      spinal tumors, malignancy, or vascular malformations;

c.      radiculopathies;

d.      myelopathies;

e.      traumatic spinal cord necrosis; or

f.      musculopathies

*(Id. at p. ML00088.)* The Plan further goes on to define "seropositive arthritis" as "[a]n inflammatory disease of the joints supported by clinical findings of arthritis plus positive serological tests for connective tissue disease." *(Id.)* (emphasis added.)

11.    On August 23, 2002, MetLife sent Plaintiff a letter advising him that his claim for LTD benefits had been approved, and that those benefits were payable retroactive to July 2, 2002. *(See id. at p. ML00434.)*

12.    On November 24, 2004, more than 24 months after Plaintiff began receiving LTD benefits, MetLife sent Plaintiff a letter reminding him of the 24-month limited benefit condition for Neuromusculoskeletal and soft tissue disorders, and requesting that Mr. Wright provide supplemental medical information on or before December 8, 2004, to establish his continued eligibility for LTD benefits. *(See id. at pp. ML00112-00113.)*

13.    On December 1, 2004, Plaintiff called MetLife and spoke with his case manager regarding the need for a positive serological test for Rheumatoid Arthritis. *(See id. at p. ML00146.)* During that conversation, Plaintiff admitted that he would probably never have a seropositive test for Rheumatoid Arthritis. *(See id.)*

14.    On December 8, 2004, Plaintiff advised MetLife that Dr. Ross had forwarded supplemental medical records that day. *(See id. at p. ML00347.)* More importantly, however,

plaintiff again admitted it was unlikely that he would ever have seropositive Rheumatoid Arthritis. *(See id. at pp. ML00347, 00350, and 00379.)*

15.     That same day, apparently due to a miscommunication, MetLife sent Plaintiff another letter advising him that it did not receive the supplemental medical information requested on November 24th, and that his claim had been closed. *(See id. at pp. ML00110-ML00111.)*

16.     Plaintiff contacted MetLife on December 13, 2004, and advised it that he had faxed additional medical information to MetLife prior to the close of business on December 8, 2004, and that he believed his claim had been prematurely closed. *(See id. at p. ML00810.)* As noted above, however, the records Plaintiff forwarded did not demonstrate that he had seropositive arthritis, or that he had any of the five other conditions that excepted his claim from the 24-month benefit limitation for Neuromusculoskeletal/soft tissue disorders. *(See id. at p. ML00807.)* Instead, they showed that Plaintiff's Rheumatoid Arthritis was seronegative. *(See id. at pp. ML00347, 00350, and 00379.)*

17.     On December 16, 2004, MetLife sent Mr. Wright an additional letter in which it again asked for him to provide MetLife with evidence that he had a positive serological test for connective tissue disease related to his diagnosis of Rheumatoid Arthritis. *(See id. at p. ML00109.)* That same day, Mr. Wright's attorney, Justin Frankel, Esquire, contacted MetLife by phone and letter to discuss Plaintiff's claim and the Plan's limited benefit condition. *(See id. at p. ML00138, ML00575.)*[3]

---

[3] Mr. Wright retained Mr. Frankel on or before December 15, 2004. *(See id. at p. ML00576.)*

18.     Around this same time, Mr. Wright asked Rex McCallum, M.D. to provide a second opinion regarding Mr. Wright's condition. *(See id. at pp. ML00547-00546.)* Dr. McCallum also concluded that Plaintiff did not have seropositive arthritis. *(See id.)*

19.     MetLife terminated Plaintiff's LTD benefits as of January 10, 2005. *(See id. at pp. ML00538-00536.)*

20.     In its January 19, 2005 letter regarding the termination of Plaintiff's benefits, MetLife again explained the 24-month limitation on benefits for Neuromusculoskeletal and soft tissue disorders. *(See id.)* Additionally, the letter summarized the recent medical records MetLife had received from Plaintiff's physicians, none of which demonstrated that Plaintiff had seropositive arthritis as that term is defined in the Plan because Plaintiff did not have a positive serological test for connective tissue disease. *(See id.)* Thus, MetLife determined that the 24-month limited benefit condition in the Plan applied to Plaintiff's Claim for benefits. *(See id.)* In closing, the letter advised Mr. Wright of his right to appeal MetLife's benefit determination pursuant to ERISA. *(See id.)*

21.     On January 21, 2005, Mr. Frankel sent MetLife a letter requesting a number of documents related to Plaintiff's claim. *(See id. at pp. ML00469-00465.)* In response, on March 10, 2005, MetLife forwarded all of the medical records and correspondence in Mr. Wright's claim file to Mr. Frankel. *(See id. at p. ML00530.)* MetLife further supplemented its production to Mr. Frankel on March 28, 2005, by forwarding a complete copy of Mr. Wright's claim file to him. *(See id. at p. ML00526.)*

22.     On May 26, 2005, Plaintiff, through his attorneys, submitted an appeal of MetLife's January 19, 2005, decision closing Plaintiff's claim for benefits. *(See id. at pp. ML02310-ML02339.)*

7

23.    Mr. Wright's appeal was lengthy and detailed, but conceded the fact that Mr. Wright did not have seropositive arthritis. *(See id. at pp. ML02314-02315.)*  Plaintiff instead contended that his Rheumatoid Arthritis did not constitute a Neuromusculoskeletal and soft tissue disorder, but instead was an autoimmune disorder. *(See id. at pp. ML02323-02324.)* Thus, Plaintiff contended that his disorder was not subject to the Plan's limited benefit condition. *(See id.)*

24.    MetLife denied Mr. Wright's appeal by letter on June 23, 2005. *(See id. at pp. ML00827-00829.)*  In conducting its review of the denial of Mr. Wright's benefits, MetLife retained a board-certified rheumatologist to evaluate his medical records. *(See id. at p. ML0828.)* The reviewing rheumatologist concluded that Mr. Wright's symptoms were caused by "low-grade inflammatory arthritis confined to his hands and wrists." *(Id. at p. ML00829.)* MetLife concluded, therefore, that Plaintiff's condition is indeed a Neuromusculoskeletal and soft tissue disorder subject to the Plan's limited benefit condition, and that Mr. Wright had exhausted his administrative remedies under the Plan. *(See id.)*

25.    On July 19, 2005, Mr. Frankel sent MetLife an additional letter in which he requested that MetLife provide him with additional information related to Plaintiff's claim. *(See id. at pp. ML00847-00851.)*  MetLife responded to this request on September 12, 2005, by advising Mr. Frankel that he should contact BearingPoint for the Plan documents he sought, and by forwarding him an additional updated copy of Plaintiff's claim file. *(See id. at pp. ML00105-106.)*

26.    On or before December 2, 2005, Mr. Wright ceased to be represented by Mr. Frankel and retained Scott Elkind, Esquire, to represent him with respect to his claim for disability benefits. *(See id. at p. ML00867.)*

8

27.    Over ten months later, Mr. Elkind sent MetLife a letter advising it of his representation of Plaintiff and requesting that MetLife provide him certain documents related to Plaintiff's claim. *(See id. at p. ML00864-00866.)* Specifically, Plaintiff's counsel requested: 1) a copy of Plaintiff's claim file; 2) a copy of the Plan document; 3) a copy of the applicable insurance contract; 4) a copy of MetLife's "claims procedures, training instructions, protocols, or other instructional or guiding materials intended to be followed, used, or referred to during the course of the review or preparation of employees for this purpose;" 5) all other writings related to Plaintiff's claim file; 6) audio and video surveillance tapes of Plaintiff; 7) Plaintiff's medical records; 8) items removed from the claim file and placed in a separate folder, including legal files and legal memoranda; 9) an explanation of the Plan's status as an ERISA-governed plan; and 10) correspondence between MetLife and other Plan fiduciaries and their respective legal counsel. *(See id. at pp. ML00864-00865.)* Counsel further advised MetLife that his request for information did "not contstitute[] an appeal of benefits. The appeal for benefits will be submitted within a reasonable amount of time after we receive the requested claims documentation." *(Id. at p. ML00865.)* That same day, Mr. Elkind sent a nearly identical letter to BearingPoint, the Plan Administrator. *(See id. at pp. ML02256-02258.)*

28.    On October 19, 2006, MetLife responded to Mr. Elkind's letter by forwarding him a copy of Mr. Wright's disability claim file. *(See id. at p. ML02262.)* Additionally, MetLife advised Mr. Elkind that he should contact BearingPoint for a copy of the Plan itself. *(See id.)*

29.    On October 24, 2006, Mr. Elkind responded to MetLife's letter and again requested a copy of the Plan as well as MetLife's claim guidelines. *(See id. at p. ML02263.)*

30.    MetLife responded three days later and again advised Mr. Elkind to contact BearingPoint directly for a copy of the Plan. *(See id. at p. ML02254.)*

31.     In lieu of contacting BearingPoint, however, Mr. Elkind sent yet another letter to

MetLife on November 3, 2006, in which he stated:

> I must ask the following: Do you really want me to believe that your company
> that issued the policy under which you have administered the above-referenced
> claim cannot provide a copy of the policy although it is clearly a pertinent
> document required to be produced under ERISA? YOU MUST BE JOKING.

*(Id. at p. ML02253)*(emphasis in original).

32.     MetLife responded to Mr. Elkind's November 3, 2006 letter by providing him

with "a copy of the Certificate of Insurance utilized in the administration of [his] client's claim."

*(Id. at p. ML02175.)* MetLife further advised Plaintiff's counsel to contact BearingPoint for any

additional Plan documents. *(See id.)* Additionally, MetLife explained to Mr. Elkind that he had

otherwise been provided with those documents relevant to Mr. Wright's claim, that no internal

rules of guidelines were specifically relied upon in making the decision to terminate Mr.

Wright's LTD benefits, and that there were no other documents responsive to his request to

which he was entitled. *(See id.)*

33.     On February 5, 2007, Plaintiff submitted an additional appeal of his adverse

benefits determination. *(See id. at pp. ML02215-02250.)*

34.     In this new appeal, in which Plaintiff submitted over 1,700 pages of "supporting"

documents, he contended that the Plan Administrator had not properly delegated its authority to

MetLife to hear Plaintiff's initial appeal, and that he was entitled to a *de novo* review of his

appeal. *(See id. at pp. ML02215-02217.)* Plaintiff's February 5, 2007 appeal also challenged the

substantive determination to deny Plaintiff's LTD benefits. *(See id. at pp. ML02215-02250.)*

Although Plaintiff's appeal contained a significant amount of information related to Plaintiff's

overall medical condition and Rheumatoid Arthritis generally, it did not contain any evidence

that Plaintiff suffered from seropositive arthritis as that term is defined in the Plan. *(See id.)*

10

35.    As a courtesy, MetLife considered Mr. Wright's February 5, 2007 appeal, but ultimately denied it by letter on May 11, 2007. *(See id. at pp. ML00188-00193.)*

36.    In its denial of Plaintiff's second appeal, MetLife rejected Plaintiff's contention that MetLife did not have the authority to administer claims under the Plan and that the Plan had been improperly administered. *(See id. at pp. ML00188-00191.)* Turning to the merits of Plaintiff's benefit claim, MetLife again explained that the Plan's 24-month limited benefit condition applied to Plaintiff's claim, irrespective of the extent of his ailments, because his claims relate to a Neuromusculoskeletal and soft tissue disorder and Plaintiff has not submitted any evidence to demonstrate that he has seropositive arthritis, or any of the other conditions that would vitiate the limited benefit condition. *(See id. at pp. ML00191-00192.)* MetLife further explained that it had fully complied with its obligations under ERISA to provide Plaintiff with relevant documents related to his claim. *(See id. at pp. ML00192-00193.)* MetLife advised Plaintiff that it had not relied on any particular claims guidelines in deciding his claim and, as a result, Plaintiff was not entitled to MetLife's claims guidelines in this matter. *(See id.)*

37.    On October 4, 2007, Plaintiff filed a lawsuit in this Court against MetLife and the Plan pursuant to ERISA. *(See Complaint.)* Plaintiff alleges that Defendants wrongfully terminated his LTD benefits, and that he is entitled to statutory penalties due to MetLife's failure to provide him with all of the information he requested. *(See id.)*

## III.    STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). See also Celotex

Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Plaintiff must oppose a properly supported motion such as the present one with "specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. A fact is material only if it might affect the outcome of the case, and a dispute is genuine only if a reasonable jury could return a verdict in favor of Plaintiff. See Anderson, 477 U.S. at 248.

Plaintiff must produce more than a mere scintilla of evidence: "If the evidence is merely colorable, or not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50. Where, as here, Plaintiff cannot set forth the required quantity and quality of evidence, Rule 56(c) mandates the entry of summary judgment in favor of Defendant. See Celotex Corp., 477 U.S. at 322.

## IV.    ARGUMENT

### A.    PLAINTIFF MAY NOT SIMULTANEOUSLY ASSERT A CLAIM UNDER 29 U.S.C. §§ 1132(a)(3) AND 1132(a)(1)(B)

In his Complaint, Plaintiff purports to bring a claim for equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), as well as a claim for benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). *(See Complaint at ¶4.)* Although the United States Court of Appeals for the District of Columbia Circuit has not addressed the issue, "the majority of circuits that have decided this issue have held that a breach of fiduciary duty claim cannot stand where a plaintiff has an adequate remedy through a claim for benefits under § 502(a)(1)(B)." Clark v. Feder, Semo & Bard, P.C., 527 F. Supp. 2d 112, 116 (D. D.C. 2007) (citations omitted). See also Korotynska v. Metro Life Ins. Co., 474 F.3d 101, 107 (4th Cir. 2006); Antolik v. Younkers, Inc., 463 F.3d 796, 803 (8th Cir. 2006); Tolson v. Avondale Industries, Inc., 141 F.3d 604, 610-611 (5th Cir. 1998). Indeed, at least three courts within this District have reached similar conclusions. See Clark, 527 F. Supp. 2d at 117 (dismissing

Plaintiff's § 502(a)(3) claim and citing Crummett v. Metro Life Ins. Co., 2007 U.S. Dist. LEXIS 50956, at *3 (D. D.C.   July 16, 2007) and Hurley v. Life Ins. Co. of N. Am., 2005 U.S. Dist. LEXIS 43038, at *32 (D. D.C. July 7, 2005)).   Thus, because Plaintiff has pled a viable, albeit meritless, claim for benefits pursuant to ERISA § 502(a)(1)(B), he should be barred from also asserting a claim for equitable relief pursuant to ERISA § 502(a)(3).

**B.     THE TERMINATION OF PLAINTIFF'S BENEFITS IS SUBJECT TO AN ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW**

MetLife's decision to terminate Plaintiff's LTD benefits should be reviewed under the deferential arbitrary and capricious standard of review.   The Supreme Court has made it clear that when "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the deferential "arbitrary and capricious" standard of review applies to the benefit-denial decision. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  The D.C. Circuit "has defined the Firestone deferential standard as one of 'reasonableness.'"  Wagener v. SBC Pension Benefit Plan – Non Bargained Program, 407 F. 3d 395, 402 (D.C. Cir. 2005) (quoting Block v. Pitney Bowes, Inc., 952 F.2d 1450, 1452, 1454 (D.C. Cir. 1992)).

This high level of deference is predicated upon the fact that "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." Firestone, 489 U.S. at 113 (internal quotations omitted). The Fourth Circuit has noted in another case involving MetLife, that: "As a fiduciary, MetLife must serve the best interests of all Plan beneficiaries, not just the best interest of one potential beneficiary." Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 234 (4th Cir. 1997) (emphasis added). Consequently, in fulfilling its fiduciary duties under ERISA, MetLife also must guard against unsupported claims. Id. at 236.

Given their important role in the claims process, the federal courts have recognized that courts must be careful not to substitute their decision-making for that of the claim administrators in keeping with the purposes of ERISA. As noted by the Fourth Circuit in Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995): "[T]he administration of benefit and pension plans should be the function of the designated fiduciaries, and not the federal courts." Thus, courts in other Circuits have "also emphasized the importance of promoting internal resolution of claims and encouraging informal and non-adversarial proceedings under ERISA." Id. (citing Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1007 & n.4 (4th Cir. 1985)).

### 1.    The Plan Grants Discretionary Authority to the Plan Administrator and Plan Fiduciaries

"In determining whether a plan grants the administrator discretionary authority, the reviewing court should focus on 'the character of the authority exercised by the administrators under the plan,' not on whether the plan uses the word 'discretion' or any other 'magic word.'" Becker v. The Weinberg Group, Inc., Pension Trust, 473 F. Supp. 2d 48, 61 (D. D.C. 2007) (quoting Block, 952 F.2d at 1453). Instead, all that is required is that the Plan contains "'empowering language' granting the plan administrator the authority to interpret the plan's terms." Id. See also De Nobel v. Vitro Corp., 885 F.2d 1180, 1187 (4th Cir. 1989).

In the present matter, there can be no dispute that the Plan conveys discretionary authority to interpret the terms of the Plan upon the Plan Administrator and Plan fiduciaries, including MetLife. See Mertens v. Hewitt Associates, 508 U.S. 248, 251 (1993) (under ERISA, anyone exercising discretionary control or authority over a plan's management, administration or assets is a fiduciary). The Certificate of Insurance for the Plan states in pertinent part:

14

**Discretionary Authority of Plan Administrator
and Other Plan Fiduciaries**

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

(*See Exhibit A at p. ML00101*)(emphasis in original). Given this unambiguous language, there can be no dispute that the Plan fiduciaries have been empowered with the discretion and authority to interpret the terms of the Plan.

### 2.    MetLife as the Plan's Claim Administrator has been Delegated the Authority to Act as a Plan Fiduciary

Contrary to the allegations raised in Plaintiff's February 5, 2007 appeal, the arbitrary and capricious standard of review is appropriate in this matter as there has been a proper delegation of authority to MetLife to determine Plaintiff's entitlement to benefits under the Plan. "To properly grant discretion under ERISA, the delegation of discretionary authority must be made by a plan document, it must be express, and it must be to a named fiduciary or its delegate." Costantino v. Washington Post Multi-Option Benefits Plan, 404 F. Supp. 2d 31, 38-39 (D. D.C. 2005) (citing 29 U.S.C. § 1105(c)). In Costantino, the Plaintiff was a participant in his employer's LTD plan. See id. at 34. After being injured in an automobile accident, the plaintiff submitted a claim for LTD benefits that was denied. See id. After filing suit, the plaintiff contended that the denial of his benefits claim was subject to a *de novo* standard of review because the Plan "did not provide express procedures for the [plan administrator] to delegate its discretionary authority to [a fiduciary]." Id. at 39.

15

After reviewing the cases cited by the plaintiff, the Court rejected the plaintiff's contentions and held that the plan did in fact expressly delegate administrative responsibility for the Plan to the claims administrator. <u>See</u> <u>id</u>. at 40-41. The Court relied on language in the Plan's summary plan description that stated that the plan administrator "has delegated administrative responsibilities for aspects of component benefit plans to various other parties." <u>Id</u>. at 40. Moreover, the Court found that such an arrangement had existed throughout the life of the plan. <u>See</u> <u>id</u>. at 41. Thus, the Court found that a proper delegation of authority existed under the terms of the Plan.

Likewise, in <u>Ruiz v. Continental Casualty Co.</u>, 400 F.3d 986 (7th Cir. 2005), the Seventh Circuit addressed whether an insurer that was responsible for administering LTD claims under an employee benefit plan constituted a fiduciary under ERISA, and whether the Plan properly delegated authority to that insurer to administer and interpret the terms of the Plan. In <u>Ruiz</u>, the plaintiff filed suit against Continental Casualty Co. ("Continental") after it terminated his LTD benefits. <u>See</u> <u>id</u>. at 989. In determining whether to apply a *de novo* or arbitrary and capricious standard of review, the Court first considered whether Continental was a plan fiduciary. <u>See</u> <u>id</u>. at 990. In determining that it was a fiduciary, the Court held that: "[a] court should [] look to whether a proposed fiduciary exercises control or authority over a particular benefit in an ERISA plan." <u>Id</u>. The Court, relying on <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200 (2004), then concluded that: "Continental was acting as a fiduciary when it determined that [the plaintiff] was not eligible for disability benefits." <u>Id</u>. Moreover, the Court held that the Certificate of Insurance for the plan constituted a plan document, and that a provision that stated that: "[Continental has] the discretionary authority to determine *Your* eligibility for benefits and to

16

interpret the terms and provisions of the policy," granted Continental discretionary authority over the terms of the plan. Id. at 990-991 (emphasis in original).[4]

The reasoning behind the Courts' decisions in Costantino and Ruiz are equally applicable to the case at bar. As an initial matter, the Certificate of Insurance specifically states: "MetLife in its discretion has the authority to interpret the terms, conditions, and provisions of the entire contract. This includes the Group Policy, Certificate and any Amendments." *(Exhibit A at p. ML00071.)* Moreover, the language conferring discretionary authority upon the Plan Administrator to interpret the terms of the Plan also confers such authority on "Plan fiduciaries," which, under the Courts' holdings in Mertens, Ruiz and Davila, would include MetLife. *(Id. at pp. ML00071, ML00101.)* See also 29 U.S.C. § 1002(21)(A). Thus, as MetLife explained to Plaintiff in its May 11, 2007 denial of his courtesy appeal, the Plan expressly provides MetLife, a Plan fiduciary, with the discretion and authority to administer claims on behalf of the Plan Administrator. *(See Exhibit A at pp. ML00188-191; ML00100-00101.)* As a result, MetLife's decision to terminate Plaintiff's LTD benefits is subject to an arbitrary and capricious standard of review.

## C.    THE TERMINATION OF PLAINTIFF'S BENEFITS WAS NOT ARBITRARY AND CAPRICIOUS

MetLife's determination that the Plan's 24-month limited benefit condition applied to Plaintiff's benefits claim was not arbitrary and capricious, and was certainly reasonable under the terms of the Plan. MetLife's decision to terminate Plaintiff's LTD benefits was required by the plain language of the Plan itself. See Foltz v. U.S. News & World Report, Inc., 613 F. Supp.

---

[4] To the extent that there is any debate regarding the issue, it is well-established that a Certificate of Insurance constitutes a plan document in the ERISA context. See Clark v. Hartford Life and Accident Ins. Co., 195 Fed. Appx. 932, 935 (11th Cir. 2006); Wert v. Liberty Life Ins. Co., 447 F.3d 1060, 1062 n. 2 (8th Cir. 2006); Morrison v. Marsh & McLennan Companies, Inc., 439 F.3d 295, 298 (6th Cir. 2006).

17

634, 639 (D. D.C. 1985)("[A]n administrator who strictly adheres to the lawful terms of an employee benefit plan may not be found to have acted arbitrarily and capriciously"); Clark, 195 Fed. Appx. at 935 ("ERISA requires that plans be administered, and benefits paid, in accordance with plan documents." (internal quotations and citations omitted)).

As noted above, the Plan limits the recovery of LTD benefits to 24 months if the claimant is Disabled due to a:

> Neuromusculoskeletal and soft tissue disorder including, but not limited to any disease or disorder of the spine or extremities and their surrounding soft tissue; including sprains and strains of joints and adjacent muscles, unless the Disability has objective evidence of:
>
> a.    seropositive arthritis
>
> b.    spinal tumors, malignancy, or vascular malformations;
>
> c.    radiculopathies;
>
> d.    myelopathies;
>
> e.    traumatic spinal cord necrosis; or
>
> f.    musculopathies

(Id. at p. ML00088)(emphasis added).

MetLife terminated Mr. Wright's LTD benefits based on a determination that his condition constitutes a Neuromusculoskeletal and soft tissue disorder. That decision was not only reasonable based on the administrative record, it was mandated by the provisions of the Plan. (See id. p. ML00192.) Plaintiff's condition was clinically diagnosed by his physicians as an inflammatory disease of the joints or an inflammatory polyarthritis, satisfying the Plan's definition of a "disease or disorder [of the] extremities and their surrounding soft tissue." (See e.g. id. at pp. ML00350, 00547-00546.) Moreover, Plaintiff's prior contention that his arthritis is an autoimmune disorder does not negate the fact that that it is also a Neuromusculoskeletal and

18

soft tissue disorder as that term is defined by the Plan. The fact that Plaintiff's condition may be an autoimmune disorder does not by itself create an exception to the Plan's contractual limitations.

MetLife also properly concluded that Plaintiff's condition does not fall within one of the Plan's six exceptions to the 24-month limited benefit condition for Neuromusculoskeletal and soft tissue disorders. As an initial matter, there is no dispute that Plaintiff's condition does not constitute a: spinal tumor, malignancy, or vascular malformation; radiculopathy; myelopathy; traumatic spinal cord necrosis; or musculopathy. *(See id. at pp. ML00837-00840, ML02310-02339, and ML02215-02250.)* Thus, the only potential exception under which Plaintiff could conceivably proceed is the exception for seropositive arthritis. As MetLife properly concluded, however, that exception also does not apply to Plaintiff's claim.

Under the terms of the Plan, "seropositive arthritis" is defined as: "[a]n inflammatory disease of the joints supported by clinical findings of arthritis plus positive serological tests for connective tissue disease." *(See Exhibit A at p. ML00088.)*(emphasis added). As noted above, Plaintiff, by his own admissions and the medical records submitted by him, has demonstrated that he has not had a positive serological test for connective tissue disease. Plaintiff's physicians stated that Plaintiff was one of 30% of patients with inflammatory polyarthritis whose serological tests were negative for rheumatoid factor. *(See id. at pp. ML00350, 00547-00546.)* MetLife had previously determined that Plaintiff was disabled and had paid benefits for the two year period permitted by the Plan. *(See id. at pp. ML00434, 00112-00113.)* Benefits were terminated only after it became clear that Plaintiff would not be able to satisfy his burden of demonstrating that he met the conditions for applying one of the exceptions to the limited benefit period set forth above. *(See id. at p. ML00134.)* Had Plaintiff's autoimmune disorder (his

19

arthritis) been seropositive, he would have been entitled to continued benefits. Under the circumstances, he is not.

Plaintiff, however, has attempted to obfuscate the relatively straightforward issues relevant to his claim by making repeated attacks on the Plan's unambiguous requirement that he have a positive serological test for connective tissue disease insofar that he argues that the extent of his impairment alone should exempt him from the Plan's 24-month limited benefit condition. (See id. at pp. ML00347, ML00350, ML00379, ML00547-00546, ML02310-02339, and ML02215-02250.) Plaintiff's arguments, however, are unavailing in the face of the clear and unambiguous language of the Plan. See Foltz, supra. As a result, MetLife's conclusion that Plaintiff does not have seropositive arthritis, and that his claim is subject to the 24-month limited benefit condition, was neither arbitrary nor capricious. Thus, Plaintiff's benefit claim fails as a matter of law.

### D.   PLAINTIFF IS NOT ENTITLED TO STATUTORY PENALTIES AS A MATTER OF LAW

Plaintiff claims statutory penalties pursuant to ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), based on allegations that MetLife failed to provide him with plan documents and MetLife's internal guidelines. There is no dispute, however, that MetLife timely provided Plaintiff with the administrative record. (See id. at pp. ML00530, 00526, 00105-00106, 02262, 02175.) This claim also fails as a matter of law because only a plan administrator, not the claim administrator that can be held liable under section 1132(c)(1).[5]

---

[5] In his Complaint, Plaintiff contends that he seeks statutory penalties pursuant to 29 C.F.R. § 2560.502-1(g); however, no such regulation exists.

1.    **MetLife, as the Plan's Claim Administrator, May Not be Liable for a Failure to Timely Furnish Plan Documents**

ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), governs the requirement to furnish plan documents to participants and beneficiaries. It provides in pertinent part:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description . . . under which the plan is established or operated.

29 U.S.C. § 1024(b)(4). Pursuant to ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), the failure to timely furnish the summary plan description may, in the court's discretion, make a plan administrator liable for statutory penalties. ERISA § 502(c)(1) provides in pertinent part as follows:

> Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $ 100[6] a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1).

Although, to Defendants' knowledge, no court within this Circuit has considered the issue, a number of other courts have concluded that ERISA § 502(c) applies only to plan administrators. See Boldt v. The Dow Chemical Co. Voluntary Group Accident Ins. Plan, No. 6:06-cv-25, 2007 U.S. Dist. LEXIS 59725, at *45-46 (S.D. Tex. August 15, 2007)(holding that 29 U.S.C. § 1132(c) only applies to plan administrators and not claims administrators); Towner v. Cigna Life Ins. Co. of New York, 419 F. Supp. 2d 172, 185 (D. Conn. 2006) (claim administrator cannot be held liable for failure to send Plaintiff requested SPD); Anderson v.

---

[6] These penalties have since been increased to $110 per day. See 29 C.F.R. § 2575.502c-1

Premera Blue Cross Blue Shield of Alaska, No. A04-0093 CV (JWS), 2005 U.S. Dist. LEXIS 21448, at *9-11 (D. Alaska May 19, 2005) (only a plan administrator can be sued under section 1132(c)); Kennedy v. Metro. Life Ins. Co., 357 F. Supp. 2d 1346, 1349 (M.D. Fla. 2005) (same); Klecher v. Metropolitan Life Ins. Co., 2003 U.S. Dist. LEXIS 9572, 32-33 (S.D. N.Y. June 5, 2003) (refusing to hold MetLife liable under 29 U.S.C. § 1132(c)(1) because MetLife was not the plan administrator); Fergus v. Standard Ins. Co., 27 F. Supp. 2d 1247, 1253 (D. Or. 1998) (holding that a claim administrator may not be liable for statutory penalties under 29 U.S.C. § 1132(c)). In the present matter, the undisputed evidence is that BearingPoint, not MetLife, is the Plan Administrator. *(See id. at p. ML00099.)*

There is no reason to deviate from the foregoing well-established case law in this case. The plan designates BearingPoint as the Plan Administrator *(See id. at p. ML00099.)* See Pension Benefit Guaranty Corp. v. Pritchard, 50 F.3d 315, 316 (5th Cir. 1995) ("Under ERISA, 'plan administrator' is a well-defined term for the fiduciary charged with administering the plan. The administrator is 'the person specifically so designated by the terms of the plan.'") (citing 29 U.S.C. § 1002(16)(A)(i)). Although both MetLife and BearingPoint are plan fiduciaries, their respective administrative responsibilities are distinct. See 29 C.F.R. §2509.75-8. The plan administrator is responsible for the overall administration of the entire benefit plan, while the claim administrator is responsible only for determining eligibility for benefits under the plan. Thus, it would be contrary to ERISA's administrative scheme to impose the obligations of a plan administrator upon a claim administrator such as MetLife.

2.    **Plaintiff is not Entitled to MetLife's Internal Guidelines and Even if he was, Metlife has no Liability Under 29 U.S.C. § 1132(c) for not Providing Them**

Plaintiff is not entitled to MetLife's internal guidelines. Courts have specifically held that a claimant is not entitled to MetLife's internal guidelines unless they have been relied upon for the adjudication of the particular claim. Byrd v. Metropolitan Life Ins. Co., No. 3:07-CV-206, 2008 U.S. Dist. LEXIS 29615 (E.D. Tenn. April 9, 2008); Brooks v. Metropolitan Life Ins. Co., No. L-06-1527, 2007 WL 3299287 (D. Md. Oct. 9, 2007) (plaintiff not entitled to claims management guidelines where they were not relied upon, submitted, considered or generated during the claim); Palmiotti v. Metropolitan Life Ins. Co., 04-civ-0718, 2006 U.S. Dist. LEXIS 8031 (S.D. N.Y. March 1, 2006) (finding that the Department of Labor has limited required disclosure of guidelines to those specifically generated in connection with the specific adverse benefit determination). On December 15, 2006, and in its response to Mr. Wright's February 5, 2007 appeal of the termination of his benefits, MetLife affirmatively advised Plaintiff that it had not relied on any plan-specific claims guidelines in deciding his initial claim or his appeal. *(See Exhibit A at pp. ML02175, ML00192-00193.)*

Even if Plaintiff were entitled to MetLife's internal guidelines, which he is not, and even if a claim administrator may be held liable for statutory penalties, which it may not, a refusal to provide its internal guidelines does not make MetLife liable under 29 U.S.C. § 1132(c). That section is limited to refusals to comply with disclosure requirements imposed by the statute itself. See 29 U.S.C. § 1132(c) (limiting statutory penalties for failure or refusal to comply with a request for information as required by "this subchapter") (emphasis added). The requirement to furnish guidelines is contained not in the statute but in the regulations. See 29 C.F.R. §

2560.503-1(g)(1)(v). Thus, the remedial provision of 29 U.S.C. § 1132(c) is, in any event, unavailable to Plaintiff.

### 3. Metlife Fully Complied with all Disclosure Requirements Applicable to It

MetLife complied with any obligation it may have had to provide Plaintiff with information relevant to his claim. Pursuant to 29 C.F.R. § 2560.503-1, a claimant is to be "provided, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. §2560.503-1(h)(2)(iii). A document, record, and/or information is relevant to a claim for benefits if it:

(i) Was relied upon in making the benefit determination;

(ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;

(iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or

(iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

29 C.F.R. § 2560.503-1(m)(8).

As noted above, MetLife responded to both Mr. Frankel's and Mr. Elkind's various requests for documents in this matter. *(See id. at pp. ML00530, 00526, 00105-00106, 02262, 02175.)* Specifically, MetLife provided: the medical records and correspondence in the claim file to Mr. Frankel on March 10, 2005; the entire claim file to Mr. Frankel on March 29, 2005; and updated copy of the claim file to Mr. Frankel on September 12, 2005; a copy of the updated

24

claim file to Mr. Elkind on October 19, 2006; and a copy of the Plan's Certificate of Insurance to Mr. Elkind in November of 2006. *(See id.)* Moreover, MetLife advised Plaintiff that he had received a copy of his claim file and the Certificate of Insurance, which were relied upon in terminating his benefits. Plaintiff has failed to provide any evidence that MetLife's assertions were in any way false or incorrect. *(See id.)* Thus, there is no dispute that Plaintiff has received all of the claim-related documents to which he is entitled and his claim must fail for this reason as well.

## V.    **CONCLUSION**

For the foregoing reasons, Defendants Metropolitan Life Insurance Company and BearingPoint, Inc. Long Term Disability Plan respectfully request that the Court grant their motion, enter judgment in their favor and against Plaintiff, and award them their costs and attorneys' fees pursuant to 29 U.S.C. § 1132(g).

Respectfully submitted,


/s/
Robert R. Niccolini (Bar# MD24783)
Adam H. Garner (Bar # MD27648)
McGuireWoods LLP
7 Saint Paul Street, Suite 1000
Baltimore, Maryland 21202
(410) 659-4400

Attorneys for Defendants

\6269602.2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SUSAN BERGER, | * | |
| Plaintiff | * | |
| v. | * | Case No.: AW 08-cv-076 |
| METROPOLITAN LIFE INSURANCE COMPANY, | * | |
| | * | |
| Defendant | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## ORDER

Upon consideration of Defendant's Motion for Summary Judgment, any Opposition thereto, and all other matters of record, it is this ___ day of _____ 2008,

**ORDERED**, that Defendant's Motion be and hereby is **GRANTED**; and it is further

**ORDERED**, that the Clerk shall enter judgment in favor of Defendant and against Plaintiff, and that Defendant shall submit a Bill of Costs and Petition for Attorneys' Fees within ten (10) days of this Order.

_____
Alexander Williams, Jr.
United States District Judge

\6275038.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER WRIGHT,

        Plaintiff

v.

METROPOLITAN LIFE INSURANCE
COMPANY

and

BEARINGPOINT, INC. LONG TERM
DISABILITY PLAN,

        Defendants

Civil Action No. 1:07-cv-01808 RBW

## DECLARATION OF MARGARET CALDERON
### REGARDING THE ADMINISTRATIVE RECORD

I, Margaret Calderon, do hereby depose and swear as follows:

1.  I am over 18 years of age. I have personal knowledge of, and am competent to testify to, the matters stated in this Declaration.

2.  I am employed by Defendant Metropolitan Life Insurance Company ("MetLife") as a Litigation Specialist.

3.  In my capacity as a Litigation Specialist, I have had access to, have reviewed, and am familiar with the administrative record in the above-captioned case.

4.  The administrative record regarding Plaintiff's claim, concurrently filed in this action as Exhibit A to Defendants' Motion for Summary Judgment and Bates stamped as ML00001 through ML02959, constitutes an accurate and complete copy of the administrative record in MetLife's possession and maintained by MetLife.

Pursuant to 28 U.S.C. Section 1746, I declare under the penalty of perjury that the foregoing is true and correct. Executed this 29th day of May 2008.

Margaret A. Calderon
Margaret Calderon

6288790.1

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER WRIGHT,                              :
                                          :
            Plaintiff                     :
v.                                        :
                                          :
METROPOLITAN LIFE INSURANCE                :      Civil Action No. 1:07-cv-01808 RBW
COMPANY                                    :
                                          :
and                                       :
                                          :
BEARINGPOINT, INC. LONG TERM               :
DISABILITY PLAN,                           :
                                          :
            Defendants                    :

## NOTICE REGARDING BULKY EXHIBIT ATTACHMENT

Exhibit A, which is an attachment to Defendants' Motion for Summary Judgment, is in excess of 500 pages, is in electronic form on CD-Rom, and is being maintained in the case file in the Clerk's Office.  These documents will be available for public viewing between the hours of 9:00 a.m. to 4:00 p.m. Monday through Friday.

Respectfully submitted,


_____/s/_____
Robert R. Niccolini (Bar # MD24873)
Adam H. Garner (Bar # MD27648)
McGuireWoods LLP
7 Saint Paul Street, Suite 1000
Baltimore, Maryland 21202
(410) 659-4400

Attorneys for Defendant

\6304714.1