IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER WRIGHT,                          :
                                       :
            Plaintiff                  :
v.                                     :
                                       :
METROPOLITAN LIFE INSURANCE            :        Civil Action No. 1:07-cv-01808 RBW
COMPANY                                :
                                       :
and                                    :
                                       :
BEARINGPOINT, INC. LONG TERM           :
DISABILITY PLAN,                       :
                                       :
            Defendants                 :
                                       :

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendants Metropolitan Life Insurance Company ("MetLife") and BearingPoint, Inc. Long Term Disability Plan ("the Plan") (collectively referred to as "Defendants"), through undersigned counsel and pursuant to Local Civil Rule 56.1, hereby submit the following Opposition to Plaintiff's Cross Motion for Summary Judgment, and Reply on their own Motion for Summary Judgment.[1]  For the foregoing reasons, Plaintiff's Cross Motion should be denied, and Summary Judgment should be entered in favor of Defendants.

---

[1] Plaintiff filed his Cross Motion in response to Defendants' own Motion for Summary Judgment, filed on June 2, 2008.  Defendants assume that Plaintiff's Cross Motion also constitutes an opposition, although Plaintiff never made this explicit.  The following therefore also constitutes Defendants' Reply.

## I.    INTRODUCTION

Although extremely lengthy, Plaintiff's Cross Motion for Summary Judgment is in fact nothing more than an elaborate smokescreen designed to obfuscate the simple issue in this case: whether MetLife properly terminated Plaintiff's Long Term Disability ("LTD") benefits under the Plan's benefit limitation applicable to his condition.  Instead of directly addressing this issue, Plaintiff has resorted to making frivolous personal attacks on defense counsel, misrepresenting the actual facts of this case, and citing numerous cases that are either not binding on this Court, or which simply do not support the assertions made by Plaintiff.  As explained more fully below, each of Plaintiff's attacks and arguments is without merit.  Defendants are entitled to judgment as a matter of law.

## II.    RESPONSE TO PLAINTIFF'S STATEMENT
## OF UNDISPUTED MATERIAL FACTS

Defendants dispute the following "undisputed facts" set forth by Plaintiff:

1.    MetLife denies improperly withholding any documents from Plaintiff or his counsel. *(See Plaintiff's Motion at pp. 2-3; Defendants' Motion at pp. 11, 24-25.)*

2.    The claims management guidelines produced in Palmiotti v. Metropolitan Life Ins. Co., 2006 U.S. Dist. LEXIS 13598 (S.D. N.Y. 2006), are not relevant to the instant matter as MetLife did not rely upon them in administering Plaintiff's claim.  *(See Defendants' Motion at p. 11.)*

3.    Plaintiff's contention that MetLife is not the Plan's Claim Administrator is incorrect.  For the reasons set forth below and in Defendants' Motion for Summary Judgment, MetLife is the Claim Administrator under the terms of the Plan and is a Plan fiduciary.  *(See Defendants' Motion at pp. 15-17.)*

2

*4.*　　Pages 8 through 14 of Plaintiff's Motion, which relate to testing methods for Rheumatoid Arthritis, do not constitute undisputed material facts.  To the contrary, they set forth Plaintiff's opinions regarding the method for determining whether an individual has Rheumatoid Arthritis based on certain medical literature as opposed to the terms of the Plan.  *(See Plaintiff's Motion at pp. 8-14.)*

### III.　PLAINTIFF'S "CLAIM FILE ADMINISTRATIVE NOTICE" IS WITHOUT MERIT

　　Contrary to Plaintiff's assertions, neither MetLife nor its counsel intentionally manipulated the voluminous claim file in this matter.  The claim file, which was produced as Exhibit A to Defendants' Motion for Summary Judgment, was produced in the manner in which it was received by counsel after having been reviewed by MetLife for several years.  To the extent that pages were produced out of order, or that certain pages were missing, such manipulation was inadvertent and incidental to the review of Plaintiff's claim.  Moreover, it is curious that Plaintiff waited until June 30, 2008 to raise the issue of the claims file's organization, when a copy of the administrative record was produced to Plaintiff's counsel in February of 2008.  To the extent that Plaintiff's counsel had any honest difficulties with the claims file, he could have simply raised the issue with Defense Counsel in a good faith effort to resolve any legitimate issue.  Plaintiff's allegations regarding the claim file thus appear to be nothing more than bluster that should be disregarded by the Court.

### IV.  PLAINTIFF MAY NOT ASSERT A CLAIM FOR BENEFITS AND A CLAIM FOR EQUITABLE RELIEF AT THE SAME TIME

Plaintiff has apparently misunderstood the argument in Defendants' Motion for Summary Judgment that Plaintiff may not simultaneously assert a claim for equitable relief under ERISA § 502(a)(3) and a claim for benefits under ERISA § 502(a)(1)(B).  *(See Defendants' Motion at pp. 12-13.)*  Defendants did not contend that both claims must fail as a matter of law because they were asserted simultaneously. Instead, Defendants merely argued, consistent with other case law within this District, that a party may not seek redress under ERISA § 502(a)(3) when that party has a viable claim for benefits under ERISA § 502(a)(1)(B).  *(See id.)*  Thus, Plaintiff's claim for equitable relief must fail for this reason as a matter of law.

Although Plaintiff has cited a number of cases from other Circuits in which courts have held that a party may assert claims for equitable relief and benefits under ERISA simultaneously, those cases are not binding on this Court.  In fact, the cases that support Plaintiff's contention – that a plaintiff may simultaneously assert a claim for benefits and a claim for equitable relief under ERISA – represent the minority view.  See Korotynska v. Metropolitan Life Ins. Co., 474 F.3d 101, 107 (4th Cir. 2006) (joining a majority of Circuits in holding that ERISA § 502(a)(3) and § 502(a)(1)(B) claims may not be asserted simultaneously). Moreover, Plaintiff's argument completely ignores the fact that other courts addressing this issue within this very District have determined that such claims may not be asserted simultaneously.  See Clark v. Feder, Semo & Bard, P.C., 527 F. Supp. 2d 112, 117 (D. D.C. 2007); Crummett v. Metropolitan Life Ins. Co., 2007 U.S. Dist. LEXIS 50956, at *3 (D. D.C.  July 16, 2007): and Hurley v. Life Ins. Co. of N. Am., 2005 U.S. Dist. LEXIS 43038, at *32 (D. D.C. July 7, 2005).  Thus, Plaintiff's argument is without merit and fails accordingly.

**V.    METLIFE'S TERMINATION OF PLAINTIFF'S BENEFITS IS
SUBJECT TO AN ABUSE OF DISCRETION STANDARD OF REVIEW**

Plaintiff's contention that MetLife's decision to terminate his LTD benefits is subject to a

*de novo* standard of review is simply incorrect.  In making this erroneous argument, Plaintiff has

confused the two-part inquiry that the Court must undertake in determining the proper standard

of review in this matter.[2]  Simply put, and as more fully stated below, as well as in Defendants'

original Motion for Summary Judgment, the Court must first determine whether the Plan confers

discretionary authority to interpret the terms of the plan upon the Plan Administrator.  Assuming

it does, the Court must then determine whether that discretionary authority was properly

delegated to MetLife.  See Ruiz v. Continental Casualty Co., 400 F.3d 986, 990-991 (7th Cir.

2005).  If the answer to both of these questions is yes, then MetLife's claims determination is

subject to an abuse of discretion standard of review.[3]  See Glenn, 128 S. Ct. at 2350-2351; see

also Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  If the answer to either

---

[2] In addition to muddling the applicable analysis the Court must undertake in determining the proper standard of review, Plaintiff has unnecessarily cited a number of opinions from outside this Circuit that either offer him little support or which he has mischaracterized.  For example, looking only at some of the cases Plaintiff cites on page 19 of his Cross Motion, Plaintiff's inaccurate citation becomes apparent.  Plaintiff's citation to Crummett, supra, is nonsensical as the case merely involves a discovery issue, and the Court specifically noted that "[a]t this stage of the litigation, the Court need not determine which standard of review applies."  See id. at *12 n.4.  His citation to Fitts v. Fed. Nat'l Mort. Assn., 236 F.3d 1, 13 (D.C. Cir. 2001), is factually inapposite because in Fitts, unlike in the present matter, the plan document did not contain a delegation of any discretionary authority to the plan administrator, much less to its delegate, to interpret the terms of the plan.  Finally, Schadler v. Anthem Life Ins. Co., 147 F.3d 388 (5th Cir. 1998), is completely mischaracterized by Plaintiff and actually holds that a non-considered issue should be remanded to the plan administrator, not that de novo review should apply.

[3] The Supreme Court's recent decision in Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343 (2008), concluded that MetLife's potential conflict of interest related to its responsibility to both determine Plaintiff's entitlement to LTD benefits and to pay such benefits is a factor to be weighed in determining whether MetLife's claims determination was an abuse of discretion.  In this regard, Glenn did not represent a sea change as much as it represented a confirmation of the Court's dicta in Firestone, which had already been adopted by a number of Circuits.  See Glenn, 128 S. Ct. at 2348; Firestone, 489 U.S. at 115.

question is no, then MetLife's determination is subject to a de novo standard of review. [4]  See id.

It is clear that the Plan confers discretionary authority upon both the Plan Administrator and MetLife.  In conferring discretionary authority, a plan need not utilize any magic words; it merely must contain "'empowering language' granting the plan administrator the authority to interpret the plan's terms." Becker v. The Weinberg Group, Inc., Pension Trust, 473 F. Supp. 2d 48, 61 (D. D.C. 2007).  See also De Nobel v. Vitro Corp., 885 F.2d 1180, 1187 (4th Cir. 1989). The parties agree that "[t]o properly grant discretion under ERISA, the delegation of discretionary authority must be made by a plan document, it must be express, and it must be to a named fiduciary or its delegate." Costantino v. Washington Post Multi-Option Benefits Plan, 404 F. Supp. 2d 31, 38-39 (D. D.C. 2005) (citing 29 U.S.C. § 1105(c)).

In the present matter, each of the foregoing requirements has been met. The Plan's Certificate of Insurance, which is clearly a Plan document, specifically states: "MetLife in its discretion has the authority to interpret the terms, conditions, and provisions of the entire contract.  This includes the Group Policy, Certificate and any Amendments."[5]  *(See Exhibit A to Defendants' Motion, hereinafter referred to as "Exhibit A", at p. ML00071.)* This language clearly demonstrates that MetLife has been expressly delegated discretionary authority to interpret the terms of the Plan.  In this regard, MetLife is also a fiduciary because it "exercises control or authority over a particular benefit in an ERISA plan." Ruiz, 400 F.3d at 990 (citing

---

[4] Plaintiff has cited a number of cases for the proposition that if a claims determination is made by an unauthorized party or in derogation of the applicable plan documents, then that determination is subject to *de novo* review.  *(See Plaintiff's Motion at p. 20.)*  That proposition is irrelevant to the case at bar because MetLife had the discretionary authority to interpret the terms of the Plan.

[5] Plaintiff's Motion incorrectly states that Defendants have relied on an extra plan document located in the administrative record at ML00102.  Although Defendants disagree that the document referenced by Plaintiff is an extra plan document, such disagreement is irrelevant because Defendants did not cite the document to which Plaintiff refers.  *(See Defendants' Motion at pp. 3, 17.)* The Certificate of Insurance, upon which Defendants did rely, is most certainly a plan document.  *(See Defendants' Motion at 17 n.4.)*

<u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200 (2004)).  Thus, MetLife was properly delegated the discretionary authority to interpret the terms of the Plan, and its interpretation of those terms is subject to an abuse of discretion standard of review.

In addition to the foregoing, and as Defendants noted in their Motion for Summary Judgment, the Plan also clearly confers discretionary authority upon BearingPoint, the Plan Administrator, and MetLife, the Claim Administrator, as it states in pertinent part:

**Discretionary Authority of Plan Administrator<br>and Other Plan Fiduciaries**

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan.  Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

*("Exhibit A" at p. ML00101)*(emphasis in original).  Given the Plan's clear and unambiguous language delegating discretionary authority upon the Plan Administrator and MetLife, Plaintiff's arguments to the contrary are disingenuous.

Notwithstanding the foregoing, Plaintiff claims that MetLife cannot claim to have been the Plan's duly appointed Claim Administrator because it repeatedly referred Plaintiff to BearingPoint, the Plan Administrator, to obtain a copy of the Plan's Summary Plan Description ("SPD").  *(See Plaintiff's Motion at p. 22.)*  Plaintiff's contention is unavailing, however, because MetLife, as the Plan's Claim Administrator, was not responsible for providing Plaintiff with a copy of the SPD; BearingPoint, the Plan's sponsor and Plan Administrator was.  *(See Defendants' Motion at pp. 23-25; Plaintiff's Motion at pp.3-4.)*  Thus, Plaintiff's argument fails in this respect as well.

## VI.    THE LONG TERM DISABILITY BENEFITS COVERAGE PROVIDED UNDER THE PLAN IS NOT ILLUSORY

Plaintiff's contention that the Plan's limited benefit condition renders the LTD benefits provided under the Plan illusory is unfounded.  Plaintiff contends that the LTD benefits under the Plan are illusory because the Plan conditions receipt of continued LTD benefits beyond 24 months for Rheumatoid Arthritis upon a positive blood test for Rheumatoid factor, which would exclude approximately 30% of people with Rheumatoid Arthritis from continued benefits under the Plan's limited benefit condition.    *(See Plaintiff's Motion at pp. 24-25.)*    In this regard, Plaintiff claims that Defendants "have chosen an improper standard for determining whether claimants suffering from Rheumatoid Arthritis should be compensated with disability benefits." *(Id. at p. 28.)*  Such an argument demonstrates a fundamental misunderstanding of the meaning of an illusory promise.

An illusory promise is defined as: "A promise that appears on its face to be so insubstantial as to impose no obligation on the promisor; an expression cloaked in promissory terms but actually containing no commitment by the promisor." Black's Law Dictionary, 8th ed. (2004).  In the ERISA context, an illusory promise exists when an insured pays premiums for benefits, yet receives nothing in return.  See May Dep't Stores Co. v. Fed. Ins. Co., 305 F.3d 597, 602 (7th Cir. 2002).  "[N]othing in ERISA, [however,] prevents [an employer] from providing its employees with benefits on a case by case basis – as long as that limitation is explicitly stated as part of the plan."  Hamilton v. Air Jamaica, Ltd., 954 F.2d 74, 77-78 (3d Cir. 1991).  Such reservations are "not an attempt . . . to avoid awarding benefits in accord with [a plan's] written promises.  On the contrary, the reservation is part of the written promise and a limitation upon it."  Id. at 78 (internal quotations omitted).

Plaintiff's argument that the LTD Plan benefits are illusory is thus wrong, as the promise of LTD benefits under the Plan is not so insubstantial as to impose no obligation upon Defendants.  To the contrary, the Plan imposes definite requirements upon MetLife to pay Plaintiff LTD benefits upon submission of sufficient proof to justify receipt of such benefits, which is exactly what MetLife did.  As noted in Defendants' Motion, MetLife paid Plaintiff LTD benefits for over 24 months pursuant to the terms of the Plan until it became clear that he no longer qualified for such benefits because the Plan expressly conditioned the receipt of future benefits for Plaintiff's Rheumatoid Arthritis upon a positive blood test for the condition (*See Defendants' Motion at pp. 17-20.*)  Far from an illusory promise, this is a clear and concrete limitation, and most certainly contains an obligation on the part of MetLife to pay such benefits if Plaintiff is able to demonstrate a continued entitlement to them.  See Hamilton, 954 F.2d at 78. Indeed, by Plaintiff's own statistical argument, the Plan's limited benefit condition would require MetLife to pay 70% of claimants with Rheumatoid Arthritis beyond the initial 24 month period. Clearly then, the limited benefit condition does not render the LTD benefits provided under the Plan illusory.

Nonetheless, Plaintiff contends the Plan's requirement of seropositive test for Rheumatoid Arthritis renders the Plan's benefits illusory because it is an "improper" standard for determining disability.  As an initial matter, Plaintiff has failed to set forth a legal argument for claiming that the limited benefit condition contains an "improper" standard for continuing benefits.  Instead, it is clear he merely disagrees with the standards set forth in the Plan based on his interpretation of certain medical literature.  In this regard, Plaintiff's argument in no way demonstrates that the LTD benefits provided under the Plan are illusory.

Plaintiff fails to recognize that Defendants do not dispute that Plaintiff was disabled at the time MetLife terminated his LTD benefits; only that he was not entitled to continued benefits for that disability under the terms of the Plan. Accordingly, Plaintiff's argument completely misses the point. Additionally, Plaintiff's argument disregards the fact that the Plan could have entirely excluded LTD benefits for Rheumatoid Arthritis, or that BearingPoint could have decided not to provide its employees with any form of LTD benefits. See Hamilton, supra. Stated somewhat differently, the issue in this case is not whether Plaintiff was disabled, but whether he had the type of disability for which he was entitled, under the terms of the Plan, to continued LTD benefits beyond 24 months. By his own admission, he did not, and MetLife's termination of LTD benefits was thus completely appropriate.

### VII.    DEFENDANTS HAVE MET THEIR BURDEN OF SHOWING THAT PLAINTIFF WAS NO LONGER ENTITLED TO PLAN BENEFITS

Plaintiff correctly notes that in ERISA cases, the party seeking to assert a policy exclusion bears the burden of doing so. *(See Plaintiff's Motion at p. 28.)* In the present matter, however, the limited benefit condition at issue is not an exclusion under the terms of the Plan; rather it is limitation, and Plaintiff has failed to cite any binding authority to show that Defendants have the burden of proving the applicability of a Plan limitation to Plaintiff's claim.

Several courts have recognized that not all limitations in insurance policies are in the nature of exclusionary clauses that deny coverage in certain situations. See Zurich v. ABM Industries, Inc., 397 F.3d 158, 172 (2d Cir. 2005) (holding that per-occurrence limitation in a business interruption policy does not constitute a policy exclusion) (citing Worcester Ins. Co. v. Bettenhauser, 95 N.Y. 2d 185, 189, 734 N.E.2d 745 (2000)); City of Tacoma v. Great Am. Ins. Co., 897 F. Supp. 486, 487 (W.D. Wash. 1995) ("The argument that any limitation on coverage is exclusionary in nature and should be treated as an exclusion is plainly wrong. Under that

rationale, literally anything less than the insurer's unconditional promise to pay any amount at any time for any reason . . . would be an exclusion and the insurer would bear the burden of proof.") (citations and quotations omitted).  In such cases, the claimant bears the burden of proving entitlement to coverage.  The reasoning behind this distinction is simple:

> The coverage language defines the set of all claims that are covered.  The exclusions define subsets of claims, that although within the main set, are nevertheless excluded.  The coverage language specifies a number of factors that must be present for coverage to exist.

City of Tacoma, 897 F. Supp. at 487 (citations and quotations omitted).

In the present matter, the limited benefit condition constitutes a limitation because it specifies a number of factors that must be present for continuing coverage to exist.  It does not simply bar all claims for benefits arising as a result of a Neuromusculoskeletal and soft tissue disorder.   Specifically, the Plan's limited benefit condition requires a claimant such as Plaintiff to show that he has one of six enumerated conditions in order to receive continued LTD benefits beyond twenty four months. *(See Exhibit A at p. ML00088.)*  Assuming a claimant is able to establish that he or she has one of these six conditions, the claimant will continue to receive LTD benefits.  This is precisely the type of limitation described in City of Tacoma, and by its very nature requires the claimant to maintain the burden of proving entitlement to benefits subject to the limited benefit condition.

Assuming, solely for the sake of argument, however, that the limited benefit condition does constitute an exclusion from coverage under the terms of the Plan, Plaintiff's argument that Defendants have failed to meet their burden of proof is without merit.  When an ERISA claims determination such as the determination in the present matter is reviewed for an abuse of discretion, the Courts have held that a plan fiduciary satisfies its burden of demonstrating the

applicability of a policy exclusion if its claims determination is reasonable. <u>See</u>, <u>e.g.</u>, <u>McCartha v. National City Corp.</u>, 419 F.3d 437, 443 (6th Cir. 2005); <u>Ball v. Blue Cross & Blue Shield of Mich.</u>, 2007 U.S. Dist. LEXIS 4666, at *20 (W.D. Mich. January 23, 2007) ("Where the arbitrary and capricious standard applies, the fiduciary's interpretation of the plan's provision -- including a limitation provision -- must be upheld if it is reasonable") (citations omitted).  For the reasons set forth in Defendants' Motion for Summary Judgment, as well as for the reasons set forth below, Defendants have shown that Plaintiff was not and is not entitled to continued LTD benefits under the terms of the Plan.

    **A.**    <u>**The Terms of the Plan are not Ambiguous and MetLife did not Improperly Deny Plaintiff's Claim**</u>

Contrary to Plaintiff's contentions, the terms of the Plan are not ambiguous, and MetLife has not used any such ambiguity to improperly terminate Plaintiff's LTD benefits based on a manipulated definition of Rheumatoid Arthritis.  As an initial matter, Rheumatoid Arthritis is not a defined term in the Plan, and MetLife agrees that Plaintiff's doctors have diagnosed him with Rheumatoid Arthritis.  Nonetheless, MetLife properly determined that Plaintiff was no longer entitled to LTD benefits because the clear and unambiguous terms of the Plan mandated such an outcome.

As noted in Defendants' Motion, the Plan limits the recovery of LTD benefits to 24 months if the claimant is Disabled due to a:

> Neuromusculoskeletal and soft tissue disorder including, but not limited to any <u>disease</u> <u>or</u> <u>disorder</u> <u>of</u> <u>the</u> spine or <u>extremities</u> <u>and</u> <u>their</u> <u>surrounding</u> <u>soft</u> <u>tissue</u>; including sprains and strains of joints and adjacent muscles, <u>unless</u> <u>the Disability has</u> <u>objective</u> <u>evidence</u> <u>of</u>:

    a.    seropositive arthritis;

b.      spinal tumors, malignancy, or vascular malformations;
c.      radiculopathies;
d.      myelopathies;
e.      traumatic spinal cord necrosis; or
f.      musculopathies

*(Exhibit A at p. ML00088)*(emphasis added).

MetLife terminated Plaintiff's LTD benefits based on a determination that his condition constitutes a Neuromusculoskeletal and soft tissue disorder.  That decision was not only reasonable based on the administrative record, it was mandated by the provisions of the Plan. *(See id. p. ML00192.)*  Plaintiff's condition was clinically diagnosed by his physicians as an inflammatory disease of the joints or an inflammatory polyarthritis, satisfying the Plan's definition of a "disease or disorder [of the] extremities and their surrounding soft tissue." *(See e.g. id. at pp. ML00350, 00547-00546.)*  Thus, Plaintiff's arthritis is indisputably a Neuromusculoskeletal and soft tissue disorder as that term is defined by the Plan.

Because Plaintiff has a Neuromusculoskeletal and soft tissue disorder, the Plan required that he provide evidence demonstrating that he had one of the six excluded conditions from the limited benefit condition in order to receive continued benefits.  MetLife properly concluded, based on the records submitted by Plaintiff, that Plaintiff's condition does not fall within one of those six exceptions.  As Defendants previously noted, the only potential exception under which Plaintiff could conceivably have proceeded is the exception for seropositive arthritis.  As MetLife properly concluded, however, that exception also does not apply to Plaintiff's claim.

The Plan defines "seropositive arthritis" as: "[a]n inflammatory disease of the joints supported by clinical findings of arthritis plus positive serological tests for connective tissue disease." *(See Exhibit A at p. ML00088.)*(emphasis added).  As Defendants have previously noted, Plaintiff, by his own admissions and the medical records submitted by him, has

demonstrated that he has <u>never</u> had a positive serological test for connective tissue disease. Thus, Plaintiff is not entitled to continued LTD benefits under the terms of the Plan.

**B.    <u>MetLife's Denial Based on a Lack of Objective Evidence was Proper</u>**

Plaintiff's contention that MetLife improperly terminated his benefits based on a lack of objective evidence further disregards the clear and unambiguous language of the Plan.   As Defendants have repeatedly noted above, as well as in their Motion for Summary Judgment, the express language of the Plan conditioned Plaintiff's continued receipt of LTD benefits for his Rheumatoid Arthritis upon him having a seropositive test for connective tissue disease. That clear requirement is precisely the objective evidence required under the Plan, and MetLife was not free to ignore the clear terms of the Plan. <u>See</u> <u>Clark v. Hartford Life and Accident Ins. Co.</u>, 195 Fed. Appx. 932, 935 (11th Cir. 2006) ("ERISA requires that plans be administered, and benefits paid, in accordance with plan documents.") (internal quotations and citations omitted). In fact, the Plan expressly states that:

> Monthly benefits are limited to 24 months during your lifetime if you are Disabled due to a:
> . . .
>
> 2.    Neuromusculoskeletal and soft tissue disorder including, but not limited to, any disease or disorder of the spine or extremities and their surrounding soft tissue; including sprains and strains of joints and adjacent muscles, unless the Disability has <u>objective</u> <u>evidence</u> of:
>
>     a.    seropositive arthritis

*(Exhibit A at pp. ML00087-ML00088)* (emphasis added).

In addition to the clear language of the Plan itself, a brief review of the administrative record illustrates that MetLife did not require Plaintiff to provide any objective evidence of his

disability other than that required by the Plan. For example, when Plaintiff's disability claim was initially denied in January of 2005, MetLife stated:

> your employer's Long-Term Disability Benefit Plan indicates that the limited benefit condition would not apply if there is <u>objective evidence of seropositive arthritis</u>. Your policy defines seropositive arthritis as an inflammatory disease of the joints supported by clinical findings of arthritis plus positive serological tests for connective tissue disease. Based on the medical information received and reviewed, <u>there is no objective evidence of seropositive arthritis</u> and the limited benefit condition would apply.

*(Id.* at p. ML00537) (emphasis added). Likewise, when MetLife denied Plaintiff's second appeal of the termination of his benefits, MetLife cited directly to the Plan language quoted above and stated:

> In order to be eligible for benefits beyond the 24-month period, <u>the Plan requires objective evidence of seropositive arthritis as defined in the Plan</u>. The medical documents contained in the file at the time that MetLife issued its termination of benefits and uphold letters as well as <u>the medical documents that you submitted for this review provide no objective evidence of seropositive arthritis</u>.

*(Id.* at p. ML 00192.) (emphasis added). Thus, it is clear that MetLife's insistence that Plaintiff provide objective evidence of seropositive arthritis was mandated by the terms of the Plan itself.

Plaintiff has attempted to avoid the clear language of the Plan by relying on a number of cases in which courts held that requiring objective evidence of disability constitutes an abuse of discretion. *(See Plaintiff's Motion at pp. 30-31.)* It should initially be noted that none of these cases is binding precedent upon this Court. Moreover, a number of the cases cited by Plaintiff have been mischaracterized.[6] Perhaps most importantly, though, the plan at issue in those

---

[6] As before (<u>see</u> note 2, <u>supra</u>), a few examples from pages 30-31 of Plaintiff's Cross Motion will suffice to show Plaintiff's mischaracterization. Plaintiff has cited the dissent in <u>Hunt v. Metropolitan Life Ins. Co.</u>, 2005 U.S. App. LEXIS 21428 (8th Cir. 2002), without identifying it as such. Similarly, Plaintiff's reliance on <u>Coker v. Metropolitan Life Ins. Co.</u>, 281 F.3d 793, 799 (8th Cir. 2002), is completely misplaced, as that that decision held that MetLife in fact <u>did</u> <u>not</u> abuse its discretion by denying the plaintiff's benefits because the objective medical evidence did not support the plaintiff's claim. <u>See also</u> <u>Pralutsky v. Metropolitan Life Ins. Co.</u>, 435 F.3d 833, 839 (8th Cir. 2006) (holding that MetLife <u>did</u> <u>not</u> abuse its discretion in denying the plaintiff's claim).

decisions either did not require the Plaintiff to provide objective evidence of his entitlement to benefits, or that such evidence was unavailable based on the nature of the plaintiff's condition. See, e.g., Sanderson v. Continental Cas. Corp., 2005 U.S. Dist. LEXIS 20941 (D. Del. September 26, 2005) (insisting on objective evidence of fibromyalgia constituted an abuse of discretion because such evidence does not exist); Mitchell v. Eastman Kodak Co., 113 F.3d 433, 442-443 (3d Cir. 1997) (holding that plan administrator abused its discretion in requiring objective evidence of chronic fatigue syndrome when such evidence was not required by the Plan).

Plaintiff contends that Rheumatoid Arthritis may also be diagnosed without a positive blood test. Plaintiff's contention completely ignores the issue before the Court, however, because, by its very terms, the Plan requires a claimant such as Plaintiff to provide objective evidence of seropositive arthritis in order to receive continued benefits for a Neuromusculoskeletal and soft tissue disorder such as Rheumatoid Arthritis beyond 24 months. Moreover, there is no dispute that a positive blood test for Rheumatoid Arthritis constitutes objective evidence of the disease and is specifically required under the terms of the Plan. Defendants do not deny that Plaintiff is disabled, only that he has failed to provide objective evidence that would make him eligible for continued LTD benefits beyond the 24 months provided under the Plan's limited benefit condition. Accordingly, Plaintiff's reliance on cases such as Sanderson and Mitchell is misplaced because objective evidence of Rheumatoid Arthritis is available and is expressly required under the terms of the Plan in order to receive LTD benefits beyond 24 months.[7] Given the foregoing, it is clear that Plaintiff's contention that MetLife's requirement that Plaintiff provide objective evidence of his continued entitlement to LTD

---

[7] Defendants recognize that not every person whose symptoms are consistent with Rheumatoid Arthritis will have a seropositive test for the disease. That does not mean, however, that a positive blood test for the disorder does not provide objective evidence of the condition.

benefits is somehow improper is nothing more than another transparent attempt to confuse the rather straightforward issues before the Court.

**VIII.    PLAINTIFF IS NOT ENTITLED TO METLIFE'S CLAIM GUIDELINES**

**A.    MetLife has Produced those Records to Which Plaintiff is Entitled**

As Defendants noted in their Motion for Summary Judgment, Plaintiff is not entitled to MetLife's claims guidelines, and MetLife has provided Plaintiff with a copy of all of the documents to which he is entitled under ERISA. *(See Defendants' Motion at pp. 11, 24-25.)* Although Plaintiff cites several cases in which various courts found that plaintiffs were entitled to claim guidelines, none of the decisions cited by Plaintiff is binding on this Court. Moreover, the facts of this case do not merit producing the documents requested by Plaintiff as they are not "relevant" documents as that term is defined under ERISA. *(See Defendants' Motion at pp. 23-25.)*

The present matter is directly analogous to <u>Brooks v. Metropolitan Life Ins. Co.</u>, 526 F. Supp. 2d 534 (D. Md. 2007), in which the plaintiff sought to augment the administrative record with MetLife's claims guidelines in a denial of benefits claim related to the very same long term disability plan at issue in this case. See <u>id</u>. at 536. In <u>Brooks</u>, the plaintiff contended that MetLife's claims guidelines were "relevant" documents to which she was entitled under ERISA and its implementing regulations because they were "undoubtedly relied upon or at least considered in the course of making the benefit determination, or demonstrate compliance with the administrative processes and safeguards required under [the regulations implementing ERISA.]" <u>Id</u>. Moreover, the plaintiff cited a number of the cases relied upon by Plaintiff in this matter. <u>Compare</u> <u>Brooks</u> 526 F. Supp. 2d at 536 n.1 and *Plaintiff's Motion at page 3-4.* In response, MetLife produced an affidavit in which a corporate representative swore, under

penalties of perjury, that such guidelines had not been reviewed in rendering a decision on the plaintiff's claim. See id.

The District Court denied the plaintiff's request to augment the administrative record. See id. at 537. Specifically, the Court held that the plaintiff's speculative assertions regarding MetLife's reliance on the claims guidelines, especially in light of the affidavit, failed to provide sufficient evidence that the guidelines were relevant under ERISA. See id. at 536-537. Moreover, the Court held that the plaintiff's contention that the guidelines were relevant to show MetLife's compliance with the plan's required administrative and procedural safeguards was unavailing because those guidelines were not considered in deciding the plaintiff's claims. See id. at 537. Finally, the Court disregarded the plaintiff's citations to other cases in which the claims guidelines had been produced as they were not binding on the District Court, they were factually distinguishable from Brooks, and there was an equal amount of authority to the contrary of the position taken by the plaintiff. See id. at 537-538.

As was the case in Brooks, Plaintiff has failed to articulate an adequate reason for compelling MetLife to produce its claims guidelines in this matter. In their Motion for Summary Judgment, Defendants advised the Court, as MetLife had previously advised Plaintiff, that MetLife had produced all of the documents upon which it had relied in deciding his claim. *(See Defendants' Motion at pp. 24-25; Supplemental Declaration of Timothy Suter, attached hereto as Exhibit 1.)* Furthermore, other than making vague assertions that MetLife's claim guidelines may reveal misconduct on the part of MetLife, or that they may show that MetLife did not comply with the terms of the Plan, Plaintiff has offered no facts to support his need for the claim guidelines or to reopen discovery as required by the Federal Rules of Civil Procedure. See Fed.

R. Civ. Proc. 56(f).[8]  Thus, for the same reasons as in <u>Brooks</u>, as well as for the reasons set forth in Defendants' Motion, Plaintiff's request for MetLife's claims guidelines must fail as a matter of law.

**B.      Plaintiff is not Entitled to Statutory Penalties**

In the event that the Court were to find that MetLife did improperly withhold documents from Plaintiff, MetLife is not subject to statutory penalties pursuant to ERISA § 502(c).  In his brief, Plaintiff cites a number of cases that he contends support his position.  As an initial matter, the courts in a number of these decisions <u>did</u> <u>not</u> in fact award the plaintiff statutory penalties. <u>See</u> <u>Auerbach v. Kanor-Curley Pediatric Assocs.</u>, 2004 WL 8707702 (E.D. Pa. March 22, 2004); <u>Graham v. Pactiv Corp. Benefits Committee</u>, 301 F. Supp. 2d 483 (E.D. Va. 2004); <u>Kornady v. Cargill, Inc.</u>, 2003 U.S. Dist. LEXIS 16382 (N.D. Ill. September 18, 2003).  Most importantly, however, Plaintiff's position is contrary to the established law in this Circuit, as well as a majority of others, and must therefore be rejected.

In <u>Davis v. Liberty Mutual Ins. Co.</u>, 871 F.2d 1134 (D.C. Cir. 1989), the plaintiff's former employer offered health insurance benefits through Liberty Mutual.  <u>See</u> <u>id</u>. at 1135.  The plaintiff brought suit against Liberty Mutual and his former employer for a denial of benefits related to his wife's pregnancy.  <u>See</u> <u>id</u>.  In addition to seeking benefits, the plaintiff also sought statutory penalties against Liberty Mutual and the former employer.  <u>See</u> <u>id</u>. at 1137 and 1138. The D.C. Circuit held that Liberty Mutual was not the plan's plan administrator because it was not designated as such in the plan document and was not the plan sponsor.  <u>See</u> <u>id</u>. at 1138. Thus, the Court concluded that Liberty Mutual was not an "administrator" as that term is defined in ERISA § 502(c) and, therefore, could not be liable for statutory penalties.  <u>See</u> <u>id</u>.

---

[8] In addition, Plaintiff should be estopped from seeking discovery in this matter when he has had a copy of the administrative record since February of 2008 and has not once asked the court to permit discovery since receiving the administrative record.

In addition to Davis, and as Defendants stated in their Motion for Summary Judgment, a number of Courts have held that an insurer, such as MetLife, which acts as a claim administrator, may not be found liable for statutory penalties under ERISA § 502(c).  See e.g. Boldt v. The Dow Chemical Co. Voluntary Group Accident Ins. Plan, 2007 U.S. Dist. LEXIS 59725, at *45-46 (S.D. Tex. August 15, 2007); Towner v. Cigna Life Ins. Co. of New York, 419 F. Supp. 2d 172, 185 (D. Conn. 2006); Anderson v. Premera Blue Cross Blue Shield of Alaska, 2005 U.S. Dist. LEXIS 21448, at *9-11 (D. Alaska May 19, 2005); Kennedy v. Metropolitan. Life Ins. Co., 357 F. Supp. 2d 1346, 1349 (M.D. Fla. 2005); Klecher v. Metropolitan Life Ins. Co., 2003 U.S. Dist. LEXIS 9572, 32-33 (S.D. N.Y. June 5, 2003); Fergus v. Standard Ins. Co., 27 F. Supp. 2d 1247, 1253 (D. Or. 1998).  In fact, this is the established view of the Second, Sixth, Seventh, Ninth, and Tenth Circuits.  See Caffey v. Unum Life Ins. Co., 302 F.3d 576, 584-585 (6th Cir. 2002) (citations omitted); Krauss v. Oxford Health Plans, 517 F.3d 614, 630 (2nd Cir. 2008) (citations omitted); Moran v. Aetna Life Ins. Co., 872 F.2d 296 (9th Cir. 1989); Anweiler v. Am. Elec. Power Serv. Corp., 3 F.3d 986, 994 n.5 (7th Cir. 1993); McKinsey v. Sentry Ins., 986 F.2d 401, 404 (10th Cir. 1993).

Given the foregoing, it is clear that Plaintiff may not obtain statutory penalties from MetLife in this matter.  Just as in Davis, MetLife is not the Plan's named plan administrator, BearingPoint is.[9]  (See Plaintiff's Motion at pp. 3-4, 22.)  Additionally, MetLife is not the Plan Sponsor as that term is defined by ERISA; BearingPoint, Plaintiff's former employer, is.  See 29 U.S.C. § 1002(16)(B)(i).  Thus, Plaintiff's claim for statutory penalties fails as a matter of law.

Notwithstanding the foregoing, Plaintiff contends that MetLife may be held liable for

---

[9] Plaintiff incorrectly contends on page 38 of his own Motion that the Plan fails to name an administrator. (See Plaintiff's Motion at p. 38)  As noted above, this contention is wrong, and is in fact inconsistent with Plaintiff's own statements on pages 3-4 and 22 of his Motion.  (See Plaintiff's Motion at pp. 3-4, 22.)

statutory penalties as it was the "*de facto* plan administrator" under the Plan.[10]  This argument

also fails as a matter of law.  As an initial matter, the principal case relied upon by Plaintiff in

this regard, <u>Law v. Ernst & Young</u>, 956 F.2d 364 (1st Cir. 1992), has been regarded as setting

forth a minority view that directly conflicts with the clear and unambiguous language of

ERISA.[11]  <u>See</u> <u>Lee v. Burkhart</u>, 991 F.2d 1004, 1010, n.5 (2nd Cir.1993); <u>McKinsey</u>, 986 F.2d at

404-405; <u>Erbe v. Billeter</u>, 2007 U.S. Dist. LEXIS 72835, (W.D. Pa. September 28, 2007)

(citations omitted).  Moreover, the D.C. Circuit in <u>Davis</u>, without using the term "*de facto*

administrator*,*" specifically rejected the argument set forth by Plaintiff when it stated:

> We are unmoved by the [plaintiff's] argument that Liberty Mutual
> should be held liable, as a fiduciary, for failure to supply a summary
> plan description. In particular, the [plaintiff] urge[s] that, since
> Liberty Mutual was possessed of the information to be conveyed by
> the plan description, it would be unfair to saddle [the employer] with
> full responsibility for the failure to furnish this information. The
> simple answer to this is that the statute contains nothing to indicate
> that fiduciaries have an obligation to provide summary plan
> information. The [plaintiff] thus ask[s] us, in effect, to tailor the
> statute to the "equities," as they perceive them, of this situation.
> Respect for our proper role requires that we decline this invitation to
> substitute our notions of fairness for the duties which Congress has
> specifically articulated by imposing liability on the "administrator."

<u>Davis</u>, 871 F.2d at 1138 n.5.  Thus, Plaintiff's contention that MetLife should be held liable for

statutory penalties as a *de facto* administrator also must fail as a matter of law.

---

[10]  Plaintiff inaccurately contends that MetLife stated that it was unable to find any case law in which
statutory penalties were awarded against it.  *(See Plaintiff's Motion at p. 41.)*  A simple review of Defendants'
Motion, however, reveals that it is Plaintiff who is being disingenuous, as Defendants' Motion contains no such
statement.  *(See Defendants' Motion.)*

[11]  Footnote 7 of Plaintiff's Motion in fact appears to be a "cut and paste job" from a previous brief filed by
Plaintiff's counsel in a different case as the quotation in the footnote does not appear anywhere in Defendants'
Motion and Defendants have not sought a protective order in this matter.

## IX.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that their Motion for Summery Judgment be granted in its entirety, and that Plaintiff's Cross Motion for Summary Judgment be denied.

Respectfully submitted,

_____/s/_____
Robert R. Niccolini (Fed Bar # MD24873)
Adam H. Garner (Fed Bar # MD27648)
McGuireWoods LLP
7 Saint Paul Street, Suite 1000
Baltimore, Maryland 21202
(410) 659-4400

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of August 2008, a copy of the foregoing was electronically served upon Scott B. Elkind, Elkind & Shea, 801 Roeder Road, Suite 550, Silver Spring, Maryland 20910, attorneys for Plaintiff.

_____/s/_____
Adam H. Garner

\6422989.2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER WRIGHT,

   Plaintiff

v.

METROPOLITAN LIFE INSURANCE
COMPANY

and

BEARINGPOINT, INC. LONG TERM
DISABILITY PLAN,

   Defendants

Civil Action No. 1:07-cv-01808 RBW

## DECLARATION OF TIMOTHY SUTER REGARDING THE ADMINISTRATIVE RECORD

I, Timothy Suter, do hereby depose and swear as follows:

1. I am over 18 years of age. I have personal knowledge of, and am competent to testify to, the matters stated in this Declaration.

2. I am employed by Defendant Metropolitan Life Insurance Company ("MetLife") as a Litigation Specialist. In my capacity as a Litigation Specialist, I have had access to, have reviewed, and am familiar with the administrative record in the above-captioned case.

3. MetLife acts as claim administrator for large numbers of different group employee benefit plans (including disability plans) sponsored by employers throughout the United States. MetLife maintains, in the ordinary course of business, a confidential and proprietary Claims Management Guidelines ("CMG") database. The CMG is not tailored to any particular plan or type of plan. The CMG is available to claims specialists to refer to, if necessary, in the course of adjudicating a claim for disability benefits. Whether or not an individual claims specialist refers



**EXHIBIT**

**1**

to the CMG in the course of adjudicating a specific claim would depend on the specific facts and issue of the claim as well as the experience and expertise of the individual.

4.    The CMG is voluminous and stored in a secure, internal electronic database that is only accessible to MetLife employees who have proper clearance.    The first page of the Introduction to the CMG includes the following language:

> The contents of this database are intended to be used only by MetLife employees with a business need to know.  They are not to be given, copied or transmitted to anyone outside of MetLife Disability unless MetLife's Corporate Law Department authorizes release of this material.

5.    The CMG contains the following language at the bottom of each page: "Metropolitan Life Proprietary & Confidential Information."

6.    MetLife has made substantial efforts to ensure that the CMG is not available to the public, or to MetLife's customers and competitors. The CMG contains confidential information belonging to MetLife.  MetLife has developed that information over the course of many years. Access to the CMG (or to any portion thereof) by competitors would allow them to utilize MetLife's claims handling procedures and/or modify their own procedures without investing the considerable time, resources and expense invested by MetLife in developing the CMG.

7.    MetLife's practice is to note in the diary notes of the claim file when the CMG has been referred to in the course of adjudicating a claim. Based upon my review of the claim file in this case and discussions with the individuals that adjudicated the Plaintiff's claim, the CMG were not referred to or otherwise used in the adjudication of the Plaintiff's claim.

2

Pursuant to 28 U.S.C. Section 1746, I declare under the penalty of perjury that the foregoing is true and correct. Executed this 1st day of August 2008.

Timothy Suter

6450887.1