IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PETER WRIGHT | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : Civil Action No: 1:07-CV-01808 RBW | |
| | : | |
| METROPOLITAN LIFE INSURANCE | : | |
| COMPANY d/b/a METLIFE DISABILITY | : | |
| | : | |
| and | : | |
| | : | |
| BEARINGPOINT, INC. LONG TERM | : | |
| DISABILITY PLAN, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S REPLY TO DEFENDANT'S REPLY TO
PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Peter Wright, by and through his counsel, hereby sets forth the following Reply

to Defendants' Reply to Plaintiff's Cross Motion for Summary Judgement.

INTRODUCTION

Defendants' conduct from the outset of this litigation has been very transparent.  They

make one unsupported allegation after another while using inflammatory language such as

calling Plaintiff's brief a "smokescreen" and characterizing arguments as "frivolous" while

failing to address the substance of the very credible points made.

As students are taught in law school:  If the facts are favorable to you, pound on the facts.

If the law is favorable, pound on the law.  If neither are favorable to you, pound on the table.

The Defendants are merely engaging in a very obvious exercise of table pounding as their

conduct in this matter has been very unseemly and the risk of exposure is real.

1

REPLY TO DEFENDANTS' FACTUAL CHARACTERIZATIONS

The Defendants' continue to dispute clear facts, many of which they have admitted. The Defendants admit that they withheld documents from Plaintiff. They attempt to excuse their wrongful behavior by stating that the documents are not "relevant." This excuse is untenable in face of the clear statutory and case law mandates for production of these materials.

Further, the Defendants have carefully worded their new factual allegation stating that the *Palmiotti* claims management guidelines "are not relevant to this instant matter as MetLife did not rely upon them in administering Plaintiff's claim." This statement is true to the extent that the claim guidelines so far obtained by Plaintiff were not the relevant guidelines. This is why the entirety of the claims management guidelines were requested by Plaintiff as the guidelines so far unobtained have a great bearing on the case, were relevant to the administration of the review of this matter, and were actually utilized by Metlife during its review. To this end, Defendants' assertion, albeit true, is extremely misleading to this Court.

The Defendants keep stating that Metlife is a "claims administrator" though they cannot point to anywhere in the Plan which designates MetLife as such or delegates any authority to it for this purpose. This is just another invention to excuse MetLife's wrongful assertion of authority in this matter.

The materials in Plaintiff's brief concerning testing for rheumatoid arthritis are uncontested facts as the record fails to set forth any contradicting information. These facts are taken from juried medical articles from very respected references and certainly are not the "opinions" of the Plaintiff as characterized by Defendants. The Defendants cannot avoid these well-established medical facts which undermine the illusory nature of their limitation exclusion

2

on which they attempt to rely for their improper benefits denial.

The only accurate factual characterization made by Defendants concerns the "extremely lengthy" summary judgement cross motion filed by Plaintiff.   This motion is very complete and contains several cogent arguments which, for the most part, have been either avoided or poorly addressed by Defendants.  For the sake of brevity, Plaintiff has not repeated the same arguments again in this Reply as the material in Plaintiff's previous Memorandum was very complete.

DEFENDANTS MAKE FALSE ACCUSATION CONCERNING THE CLAIM FILE ORGANIZATION

Defendants' fallaciously charge that Plaintiff waited until 6/30/08 to raise the issue of the claim file organization.  This assertion is without merit.  The original claim file submitted to Plaintiff prior to filing his administrative appeal in this case was in proper order.[1]  The Defendants have manipulated Plaintiff's submitted appeal documents added to the claim file thereafter.  Until the time of this litigation and production of the newly manipulated claim file, there was no possible way for Plaintiff to verify this fact.  For this reason, the Defendants make another inaccurate and unsupported charge.  Such conduct by the Defendants cannot be disregarded by this Court as it is demonstrative of their stance throughout the review and litigation of this claim.

DEFENDANTS CONSISTENTLY FAIL TO CITE CONTRARY AUTHORITY FOR THEIR POSITION CONCERNING DUAL ACTIONS FOR PAYMENTS OF BENEFITS AND EQUITABLE RELIEF

In addressing Defendants' contentions concerning dual assertion of a claim for payment

---

[1]Plaintiff will proffer production of the original claim file submitted by Metlife for verification but has not done so at this time as the material would be redundant and only add a large volume of documents to a rather extensive court file.

3

of benefits and equitable relief, Plaintiff pointed out that Defendants' failed to address any contrary authority.  This was surprising as there was a wealth of authority from other circuits finding differently than the district court case law cited by the Defendants.  Characterization of this as a "minority" position is clearly untrue, especially with the paucity of authority cited by the Defendants in opposition to the circuit case law clearly favoring Plaintiff's position.

In the end, Plaintiff is seeking payment of his benefits.  This not in dispute although Defendants go to great lengths to create a perceived dispute.  It is merely a distinction without a difference.

Again, this Court must remain cognizant of the continuing failure by Defendants to either cite to or pertinently address contrary authority in this case.

THE TERMINATION OF BENEFITS IS SUBJECT TO *DE NOVO* REVIEW

Defendants' consistently fail to cite to any language in the plan which clearly and specifically delegates any authority onto Metlife for the purpose of administrating the underlying disability claim.   The case law is very clear that  In fact, it was Plaintiff's who pointed out the two-step analysis voiced in *Ruiz v. Continental Cas. Co.*, 400 F.3d 986, 990 - 1 (7th Cir. 2005) which was not applied by the Defendants in their original brief.  Still, the Defendants cannot point to any language in the plan which sets forth the requirements voiced in *Constantino v. Washington Post Multi-Option Benefits Plan*, 404 F.Supp.2d 31, 38 - 9 (D.D.C. 2005)(citing to 29 U.S.C. § 1105 (c)) that there must be a:

> grant discretion under ERISA, the delegation of discretionary authority must be made by a plan document, it must be express, and it must be to a named fiduciary or its delegate.

Instead, Defendants point to only general language in an extraneous document which is

4

clearly insufficient.  Pointing to plan language granting discretionary authority to the Plan

Administrator is correct as BearingPoint was the Plan Administrator.  Unfortunately,

BearingPoint (now KPMG) never reviewed the claim.  The entirety of the claim review was

undertaken by MetLife.  The Defendants never once point to a provision which explicitly grants

discretionary authority to MetLife to perform this function.   Instead they deem Metlife to be a

"claim administrator" despite the fact that there is no reference in the Plan which delegates this

authority to MetLife.  Such a position is clearly unsupported and untenable.

For this reason, Metlife has engaged in a claim review without being delegated proper

authority rendering this matter subject to the *de novo* standard of review.

In addressing this issue, the Defendants have taken a very hypocritical stance which

exposes the weakness of their case.  In a desperate effort to support their position,  Defendants

have produced additional evidence outside the claim record in the form of a "corporate affidavit"

(Defendant Exhibit 1).

The law concerning use of evidence extrinsic to the record in cases governed under

ERISA in this jurisdiction is very clear and well known to the Defendants.   Under the

deferential standard of review, a court may not consider evidence outside of the administrative

record.  *Doe v. MAMSI Life and Health Insur. Co.*, 471 F.Supp.2d 139 (D.D.C. 2007) citing 29

U.S.C.A. § 1001; *Hurley v. Life Insur. Co. of North Am.*, 2006 WL 1883406 at *4 (D.D.C.

7/9/06).  For this reason, under the deferential standard of review as claimed by Defendants, the

Affidavit (Defendant's Exhibit 1) must be excluded and disregarded.

The only ERISA cases in which evidence outside the administrative record is allowed are

those decided under the *de novo* standard of review.  *Hunter v. Metropolitan Life Ins. Co.*, 2002

WL 32072472 at *1(D.D.C. 8/9/02).

Therefore, Defendants own conduct by adding and relying on evidence extrinsic to the administrative record serves as an admission that this matter should be decided under the *de novo* standard of review. In the alternative, the use of this new evidence should serve as a waiver of any reliance on the deferential standard of review and the *de novo* standard of review should be applied.

No matter what, Defendants arguments for deferential review fail miserably in light of the very cohesive argument made by Plaintiff in his initial briefing and this claim should be reviewed under the *de novo* standard of review.

DEFENDANTS CANNOT CONTRADICT THE ILLUSORY NATURE OF THE POLICY EXCLUSION

Defendants go to great lengths to employ case law from many other jurisdictions in cases which have no relation to ERISA nor binding authority. Even then, the Defendants' set forth very generalized authority which fails to support their contentions. They simply cannot alter the medical facts that:

- **Serotesting is NOT the diagnostic standard for rheumatoid arthritis which is based on a much broader clinical diagnosis**

- **Up to 30% of patients with rheumatoid arthritis are seronegative yet still suffer the same symptoms as those who are serpositive**

- **Serotesting is not specific and results in many false positive and negative tests to the extent that similarly affected twins can have different results**
- **Serotesting has not predictive value of disease severity**

- **Medications taken to relieve rheumatoid arthritis will cause a patient to become seronegative**

- **Patients can change from seropositive to seronegative and back while still suffering from rheumatoid arthritis**

Taking these factors in consideration, 30% of rheumatoid arthritis patients will be seronegative and excluded immediately with many still suffering the same symptoms as those who are seropositive.  While the remainder of rheumatoid arthritis who are receiving proper medication treatment for their condition  will be excluded from continuing coverage beyond the 24 month limitation exclusion as it masks seropositivity.  Defendants have offered absolutely no evidence to contradict the medical facts which prove this and thus the limitation exclusion is completely illusory.  As usual, Defendants point only to the facts which they believe favor them rather than addressing all of the evidence of record.

The legal support utilized by Defendants is similarly defective in supporting their position as the language employed is in a provision clearly limiting coverage and is plainly exclusionary in nature.  The nebulous legal support contending otherwise is rather disingenuous.

In the end, this scenario results in the impermissible result that the insured promised to pay premiums with no real promise to receive benefits return.  *May Dept. Stores Co. v. Fed. Ins. Co.*, 305 F.3d 597, 602 (7th Cir. 2002).

DEFENDANTS HAVE FAILED TO PROVE HOW THE POLICY EXCLUSION IS APPLIED TO DENY BENEFITS AS REQUIRED UNDER LAW

The burden rests on the defendant to demonstrate how a specific policy exclusion is applied to deny benefits.  *Moore v. Blue Cross and Blue Shield of the Nat'l. Capital Area and CapitalCare, Inc.*, 70 F.Supp.2d 9, 25 (DC Cir. 1999) citing *Horton v. Reliance Standard Life Insur. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998); *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1205 (10th Cir. 1992).   *See Also*, *Jenkins v. Montgomery Inds., Inc.*, 77 F.3d 740, 743 (4th Cir. 1996);  *Sunex Int'l, Inc. v. Travelers Indemnity Co. of Illinois*, 185 F.Supp.2d 614,

617 (D.S.C. 2001).  If an insurer claims that a specific policy exclusion applies to deny the insured benefits, the insurer generally must prove the exclusion prevents coverage. *McClurg v. Hartford Life and Accid. Ins. Co.*, 2006 WL 2801878 (M.D.Fla. September 28, 2006) *Crosswhite v. Reliance Standard Life Ins. Co.*, 259 F.Supp.2d 911, 918 (E.D.Mo. 2003);  *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998); *Farley v. Benefit Trust Co.*, 979 F.2d 653, 658 (8th Cir. 1992).

General principles governing exclusion clauses in an insurance policy are no less applicable to an insurance policy governed by ERISA, and thus exceptions are given strict construction, must be specific and clear, and are not to be extended by interpretation or implication. *Critchlow v. First Unum Life Ins. Co.*, 378 F.3d 246 (2nd Cir. 246) citing 29 USCA § 1001, et seq.

The insurers have refused to explain the formulation for why the policy exclusion has been written.  Instead, they offered a general recitation of law with no actual explanation for their formulation for the exclusion provision other than it is what it is and that should be sufficient. Such explanation is not sufficient nor is the limitation exclusion reasonable in light of the clear medical facts which demonstrate that it prevents nearly all rheumatoid arthritis claimants from receiving benefits beyond 24 months of coverage.

Plaintiff asserts that the insurer deliberately chose carefully worded language chosen so as to avoid nearly all coverage for person suffering from rheumatoid arthritis.  If the insurer had been honest in selling its policy, it would simply have limited payments for this condition to 24 months rather than promoting a policy which details possible extended benefits for many years.

DEFENDANTS HAVE FAILED TO DEMONSTRATE THAT THE POLICY LANGUAGE IS NOT AMBIGUOUS

Defendants have chosen to define Rheumatoid Arthritis in the policy in a completely skewed and artificial fashion, rendering the limitation exclusion ambiguous. They describe it as a "neuromusculoskeltal and soft tissue disorder." The most cursory review of the medical literature fails to reveal a single time that rheumatoid arthritis is described as such. From the outset, the insurer has created an artificial definition of the disease condition which has no basis in medical fact.

The gold standard of RA diagnosis is the American Rheumatological Association (now American College of Rheumatology) which developed the initial criteria in 1987 include seven findings as follows:

- Morning stiffness in and around the joints, lasting at least one hour before maximal improvement

- Soft tissue swelling or fluid (not bony overgrowth) observed by a physician, present simultaneously for at least 6 weeks in three joint areas

- Swelling of wrist, MCP or PIP joints for at least 6 weeks

- Simultaneous involvement of the same joint areas on both sides of the body

- Subcutaneous nodules over bone prominences, extensor surfaces or in juxta-articular regions, observed by a physician

- Detected by a method positive in fewer than 5% of normal controls

- Radiographic evidence including bony erosions or decalciification localized in or most marked adjacent to the involved joints.

This diagnosis is made by a physician in a clinical setting, not by an insurer as part of a paper review.

Defendants have not contested that this is the proper diagnostic standard for rheumatoid arthritis. Whereas, they have defined a person's ability to qualify for benefits in a deliberately

9

ambiguous fashion as follows:

> Neuromusculoskeletal and soft tissue disorder including, but not limited to any disease or disorder of the spine or extremities and their surrounding soft tissue; including sprains and strains of joints and adjacent muscles, unless the Disability has objective evidence of:
>
> a. seropositive arthritis

It is obvious that Defendants chose to exclude nearly the entire the diagnostic standard and focus on only a single factor which, by itself, is not demonstrative of the disease condition. In fact, it is only on of several objective test for diagnosing the condition, but rather is only one of series of objective tests for this purpose.

The insurer's definition for the purpose of qualifying for disability benefits for rheumatoid arthritis was written in a deliberate effort to avoid paying nearly all persons with this condition. The medical literature makes it clear that 30% of all persons suffering from rheumatoid arthritis will not be seropositive experiencing symptoms of equal severity. Of the remaining 70%, a great majority will be rendered seronegative due to action of medication. Thus, in the end, very few persons with rheumatoid arthritis will be paid long term benefits longer than 24 months due to this carefully worded and blatantly unfair provision. When the actual factual evidence is taken into consideration, the ambiguous nature of this limitation exclusion provision becomes very apparent and is improper under the case authority previously cited.

DEFENDANTS' INSISTENCE ON "OBJECTIVE EVIDENCE" IS NOT SUPPORTED

Defendants continue to insist on "objective evidence" of seropositive arthritis as evidence of disease severity in a rheumatoid arthritis patient. This runs contrary to the clinical definition of the disease as cited previously and the medical literature which states that this is not a proper

standard for diagnosis or clinical severity of the condition.  The clinical diagnosis of rheumatoid arthritis involves examination results which may or may not be "objective" in the eye of the insurer.  As it stands, the insurer fails to set forth a definition of "objective" which would allow for the American College of Rheumatology definition of rheumatoid arthritis to be utilized by this Court due to the inherent ambiguity in the plan.

In cases where objective evidence cannot be obtained, and it would be unreasonable for an administrator to demand the impossible.  *Pralutsly v. Metropolitan Life Insur. Co.*, 2006 U.S.App. LEXIS 1142, *15 (8th Cir. January 169, 2006).  For example, a verifiable condition known to cause pain is sufficient where there are no objective tests known capable of confirming the claimant's pain.  *Connors v. Connecticut Gen. Life Ins. Co.*, 272 F.3d 127, 136 (2d Cir. 2001); *Krizek v. Cigna Group Ins.*, 345 F.3d 91, 102 (2d Cir. 2003);   Followed in *Slupinski v. First Unum*, 2005 U.S.Dist.LEXIS 21601 (S.D.N.Y. September 27, 2005), Also See, *Sanderson v. Continental Cas. Corp.*, 2005 U.S.Dist.LEXIS 20941 (D.Del. September 26, 2005)(insurer's insistence on objective evidence in case where claimant suffered from fibromyalgia was arbitrary and capricious as such is evidence was unavailable) citing *Brown v. Continental Cas. Co.*, 348 F.Supp.2d 358 (E.D.Pa. 2004); *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433 (3rd Cir. 1997).

Defendants' insistence on the production of "objective evidence" is only another instance of improper claims handling conduct undertaken in this case.  It is just an artificial construct enacted designed to prevent payment of benefits to claimants.

DEFENDANTS' CONCEALMENT OF PERTINENT DOCUMENTS REQUIRES IMPOSITION OF PENALTIES

Defendants have admitted that they have refused to produce the claim manual under which the instant claim was administered.  They have presented no excuse for their conduct nor

have offered *in camera* inspection of the claim manual to this Court to support their claim that the materials requested are "relevant."  Instead, the Defendants steadfastly refuse to allow anyone to review these materials.

Plaintiff in his Cross Motion for Summary Judgement Memorandum has cited a wealth of authority support imposition of penalties.  This authority has not been contradicted by the Defendants.

Rather, the Defendants attempt to avoid penalties by claiming that the information from the claim manual sought is not "relevant" in spite of substantial authority cited by Plaintiff, most notably  *Palmiotti v. Metropolitan Life Ins. Co.*, 2006 WL 510387 (S.D.N.Y. 3/1/06) ordered production of the claim manual, but also paid an attorney fee for the time taken in litigation to acquire it. See subsequent order at *Palmiotti*, 2006 WL 1637083 (S.D.N.Y. 6/9/06).  Further, unlike the facts in *Brooks v. Metropolitan Life Ins. Co., et al.*, 526 F.Supp.2d 534 (D.Md. 2007), the Plaintiff requested the claim manual during the administrative appeal period and is not seeking to enlarge the administrative record.  Simply put, the Plaintiff is only seeking what he was entitled to as part of the administrative review process and no more.  Defendants have done no more than present a smattering of contrary authority which in now way relieves them of the their obligation of production during the administrative review.

Next, the Defendants offer the ludicrous argument that a request to the plan administrator must be made to receive such materials.  The named Plan Administrator is BearingPoint (now KPMG).  Therefore, Defendants try to make a straight face argument that a request must be made to BearingPoint to receive materials solely held by MetLife despite the fact that multiple requests were made to MetLife who refused to produce the requested materials.  Even worse,

Defendants go on to claim that, despite no evidence in the plan, that MetLife is the "claim administrator" and therefore has authority to review and decide the claim. Yet, although charged with the duty of claim administration, Metlife is not responsible for production of the relevant documents on which it has based its claim decision. Such a stance could not be more hypocritical or unsupportable.

Plaintiff has produced a wealth of authority in his Cross Motion for Summary Judgement Memorandum which sets forth that Metlife was responsible for producing the requested documentation as it was acting as a *de facto* claim administrator and should be charged with that responsibility. In light of Defendants argument that MetLife was actually acting as a "claims administrator," it is rather disingenuous for them to argue against that position when it comes to payment of penalties asserting that they were not charged with such responsibility.

Further, Defendants argue that Plaintiff seeks to "augment" the administrative record. This is not true. Plaintiff only is seeking the documentation to which he was entitled to **in the first place**. Defendants' accusation to the contrary is ridiculous. Defendants' steadfast refusal to produce these materials should now result in the production of the documents sought and the imposition of penalties due to their ostensible bad faith conduct during the administrative review in this matter.

CONCLUSION:

Given the tone and stances taken in their briefing, it is very apparent that Defendants are taking a "scorched earth" position in this case. They concede nothing despite taking many unsupported and/or openly hypocritical positions. Their briefing is rife with hostility but rather short substance. Basically, the Defendants have done no more than try to deflect from the cogent

13

arguments made by the Plaintiffs.  This technique was well described by the Bard as " a tale told

...full of sound and fury, signifying nothing."[2]

Once you remove the bluster from the Defendants' arguments, it becomes clear that they

are seeking to protect themselves from liability far greater than that presented in the instant case.

Defendants are very cognizant of the implications of this litigation.  They understand that they

have contrived an illusory limitation exclusion that, if exposed, would cost them many millions

of dollars in claims to be paid.  Obviously, in attempting to avoid such liability, the Defendants

will stoop to any level to prevent such an economic loss.   Such measures would include the

refusal to provide pertinent documentation to an insured to assist him in perfecting his appeal for

benefits, making unfounded accusations against Plaintiff's counsel, attempting to add evidence

to an administrative file after it has been closed, an taking many unsupported, if not outright

hypocritical, litigation positions.

Plaintiff's arguments presented in his Cross Motion for Summary Judgment are set forth

in a detailed, cogent fashion and should be followed by this Court.  When the facts and law are

considered without consideration of Defendants' incendiary rhetoric, it is obvious that their

behavior is contrived to distract from the several truths in this matter:

- Defendants have contrived an illusory limitation exclusion which prevents payments to nearly all beneficiaries suffering from rheumatoid arthritis

- The pertinent Plan does not expressly delegate discretion to Metlife as a "claims administrator" and this matter must be decided under the *de novo* standard of review

- Defendants have wrongfully withheld pertinent documents from Plaintiff and should be sanctioned in the form of statutory penalties due to their conduct

---

[2]William Shakespeare, *Macbeth*, V, v, 17.

WHEREFORE, Wright respectfully requests that this court to undertake the following:

Deny Defendant's Motion for Summary Judgment in this matter;

Order MetLife to produce its claim guidelines in their entirety and allow Wright to set forth additional briefing on the issues which could not be addressed in the first set of Summary Judgment pleadings;

Review the denial of benefits in this case and declare  that he is entitled to all benefits under the policy including payment of all back benefits with interest;

Payment of all attorney's fees and costs associated with attempting to secure these benefits pursuant to Section 502(g)(1) of ERISA;

Assess statutory penalties payable in the amount of $110/day or other amount as to be determined by this Court pursuant to 29 C.F.R. § 2560.502 - 1(g) *et seq.* as a result of the failure of Defendants to produce the documents requested from the date of first request to the present day; and

Any such other relief  the Court may deem just and proper.

Respectfully submitted,


_____/s/_____
Scott B. Elkind, DC BAR No.43811
Elkind & Shea
801 Roeder Rd., Ste. 550
Silver Spring, MD 20910

(301) 495-6665
Counsel for Plaintiff

REQUEST FOR ORAL ARGUMENT

Plaintiff requests oral argument on all issues raised herein.

Respectfully submitted,

_____/s/_____
Scott B. Elkind, Bar 43881
Elkind & Shea
801 Roeder Rd., Ste. 550
Silver Spring, MD 20910
P: (301) 495-6665
F: (301) 565-5111
Attorney for Plaintiff

16